**COMMONWEALTH of Pennsylvania**

v.

**Jennifer Dawn LANGSTON, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 9, 2006.

Filed July 17, 2006.

918

Michael S. Sherman, Wexford, for appellant.

Randa B. Clark, Asst. Dist. Atty., Butler, for Com., appellee.

BEFORE: FORD ELLIOTT, P.J., BOWES and POPOVICH, JJ.

OPINION BY FORD ELLIOTT, P.J.:

¶ 1 Appellant, Jennifer Dawn Langston, appeals from the order of May 23, 2005, denying her motion to modify the sentence/restitution and granting the Commonwealth's motions to amend the restitution order. After careful review, we are constrained to vacate.

¶ 2 The underlying facts of this case are tragic but not in dispute. On June 15, 2002, appellant's pick-up truck crossed the center line and struck Glenn Clark's vehicle head-on. Mr. Clark died; his wife, Annette Clark, lapsed into a coma. At the time of the accident, Mrs. Clark was pregnant; she gave birth to a healthy son, Michael, while in a persistent vegetative state. Matthew Phillips and Michelle Phillips were named plenary co-guardians of Michael Clark.

¶ 3 On September 22, 2003, appellant entered into a negotiated guilty plea to homicide by vehicle, recklessly endangering another person ("REAP"), and two summary offenses, reckless driving and driving a vehicle at an unsafe speed. On November 7, 2003, the Honorable George H. Hancher, in accordance with the plea agreement, sentenced appellant to an aggregate term of 30 days to 7 months' imprisonment, followed by 5 years' probation. As part of her sentence, appellant was ordered to pay restitution in the amounts of $250 to Hugh Clark[1] and

1. It is unclear from the record before us who Hugh Clark is, or why he was entitled to

$20,000 to the Crime Victim's Compensation Program. The purpose for the $20,000 restitution order to the Crime Victim's Compensation Fund ("the Fund") was to reimburse the Fund for monies it had paid out to the Phillipses to be held in trust for Michael Clark.

¶ 4 In addition, in accordance with the negotiated plea, several special conditions of probation were imposed. Appellant was ordered to pay $50/month during the entire five-year probationary period into a fund created to benefit Michael Clark; appellant was ordered to carry a picture of the decedent, Glenn Clark, in her wallet; she was ordered to write letters of apology to the Clark family and to the administration, faculty, and students of Mars Area High School, where Glenn Clark had been a wrestling coach; and appellant was ordered to complete 480 hours of community service, eight hours per month during the five-year probationary term.

¶ 5 On November 14, 2003, appellant filed a motion to modify the restitution order, stating that the Phillipses had already received in excess of $300,000 in insurance payments for the minor child, Michael Clark; and therefore, under the set-off provisions of the Crime Victims Act ("CVA"), 18 P.S. § 11.101 *et seq.*, they were not entitled to any payment from the Fund. Appellant also stated that a third-party civil suit was pending, and requested that the court modify her sentence by eliminating the $20,000 restitution provision.

¶ 6 On February 4, 2004, the Commonwealth filed a motion to amend, requesting that the Phillipses be substituted for the Fund as the recipients of the $20,000 restitution. The Commonwealth averred in its motion that the Fund had paid out $20,000 for loss of support to Matthew Phillips, co-

guardian of the estate and of the person of Michael Clark; that by letter dated January 14, 200[4], the Office of Victims' Services demanded reimbursement of said funds, due to an insurance settlement in the amount of $400,000; that the victims' damages far exceeded that recovered under the insurance policies; and that, in its letter to the Phillipses, the Office of Victims' Services stated that once it had been reimbursed in full, it would notify the clerk of courts to adjust the records so that the restitution would "revert to you." (Docket No. 76.)

¶ 7 On March 18, 2004, the trial court filed a memorandum and order denying both motions, opining that until the Fund had actually been reimbursed, there was no issue to decide. On April 13, 2004, appellant filed a notice of appeal from the court's order of March 18, 2004, denying her motion to modify the sentence. On June 25, 2004, during the pendency of the appeal, the Commonwealth filed another motion to amend, asserting that the Fund had been reimbursed and the issue was ripe for review. The Commonwealth stated that Matthew Phillips had reimbursed the Fund $17,900, the difference between the $20,000 paid to Phillips by the Fund and $2,100 already paid by appellant to the clerk of courts' office.

¶ 8 The Commonwealth made a motion for remand; and on January 25, 2005, this court granted said motion and remanded to the trial court. On May 23, 2005, the lower court granted the Commonwealth's motion and ordered that appellant make monthly payments to the Butler County Clerk of Courts for distribution to the Phillipses until the sum of $17,900 has been paid. On June 15, 2005, appellant filed a timely notice of appeal. Appellant

---

restitution from appellant; however, appellant does not contest this aspect of her sentence, only the $20,000 originally ordered to be paid to the Fund.

has complied with the court's order to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b); and the trial court has filed a supplemental memorandum opinion addressing the claims raised therein.

¶ 9 Appellant brings the following issues for this court's review:

1. Whether the trial court erred by awarding restitution to a person (i.e., minor child) who is not a 'victim' for restitution purposes as set forth in the Crimes Code and Sentencing Code?

2. Whether the Commonwealth's request to substantively modify the restitution order was untimely made?

3. Whether the trial court erred by failing to apply the applicable factors that must be considered before awarding restitution?

4. Whether the trial court erred by failing to offset the restitution award by monies the minor child received from insurance settlement proceeds and social security benefits?

Appellant's brief at 4.

¶ 10 Because we find appellant's first issue to be dispositive, we need not address her remaining issues. Appellant argues that the trial court erred by awarding restitution to a person who is not considered a "victim" of the crimes involved as defined by the Crimes Code and the Sentencing Code. After studied review, we must agree.

■■■ ¶ 11 Before considering appellant's argument on its merits, we must first address the Commonwealth's contention that this issue is waived for failure to raise it in appellant's 1925(b) statement. Ordinarily, claims not raised in a court-ordered Rule 1925(b) statement are deemed waived on appeal. *See Commonwealth v. Schofield*, 585 Pa. 389, 888 A.2d 771 (2005); *Commonwealth v. Castillo*, 585 Pa. 395, 888 A.2d 775 (2005); *Commonwealth v. Lord*, 553 Pa. 415, 719 A.2d 306 (1998). However, appellant's claim, that the minor child is not a "victim" statutorily entitled to restitution, implicates the legality of the restitution sentence. "Challenges to the appropriateness of a sentence of restitution are generally considered challenges to the legality of the sentence." *Commonwealth v. Colon*, 708 A.2d 1279, 1280 (Pa.Super.1998) (citations omitted). The legality of a sentence is an issue that cannot be waived. *See, e.g., Commonwealth v. Edrington*, 780 A.2d 721, 723 (Pa.Super.2001), citing *Commonwealth v. Archer*, 722 A.2d 203, 209 (Pa.Super.1998). Therefore, we conclude that appellant's challenge to the legality of her restitution sentence is cognizable, despite her failure to raise this issue in her Rule 1925(b) statement. *Id.*, citing *Commonwealth v. Smith*, 772 A.2d 75, 81 n. 10 (Pa.Super.2001).[2]

---

2. We also note that appellant entered into a negotiated guilty plea which included the $20,000 restitution provision. However, as discussed above, appellant challenges the legality of sentence. Where a defendant has agreed to an allegedly illegal sentence, he or she is not thereafter precluded from raising the issue on appeal. *See, e.g., In the Interest of M.W.*, 555 Pa. 505, 725 A.2d 729 (1999) (juvenile defendant agreed to make restitution as part of a negotiated sentence, and subsequently brought a challenge to the agreed-upon restitution order on appeal, arguing that the order was illegal); *compare Commonwealth v. Reichle*, 404 Pa.Super. 1, 589 A.2d 1140 (1991) (where a defendant entered into a negotiated guilty plea that was accepted by the sentencing court, she waived any challenge to the discretionary aspects of her sentence, as opposed to its legality); *Commonwealth v. Harvey*, 407 Pa.Super. 545, 595 A.2d 1280 (1991), *appeal denied*, 530 Pa. 652, 608 A.2d 28 (1992) (where defendant entered into a negotiated guilty plea and no direct appeal

¶ 12 "In evaluating a trial court's application of a statute, our standard of review is plenary and is limited to determining whether the trial court committed an error of law." *Commonwealth v. Tareila*, 895 A.2d 1266, 1267–1268 (Pa.Super.2006), quoting *Commonwealth v. Stevenson*, 850 A.2d 1268, 1271 (Pa.Super.2004).

¶ 13 Mandatory restitution is statutorily grounded in two provisions, 42 Pa.Con. Stat.Ann. § 9721(c) and 18 Pa.Con.Stat. Ann. § 1106(a).

> The Sentencing Code, 42 Pa.Con.Stat. Ann. § 9721(c) provides that 'the court shall order the defendant to compensate the victim of his criminal conduct for the damage or injury that he sustained.' 42 Pa.C.S.A. § 9721(c). The ordering of restitution is further defined by 18 Pa. Con.Stat.Ann. § 1106(a). *'Section § 1106(a) sets forth the general rule that upon conviction for any crime wherein the victim suffered personal injury directly resulting from the crime, the offender shall be sentenced to make restitution in addition to the punishment prescribed therefore.'* 18 Pa.Con.Stat. Ann. § 1106(a); *Commonwealth v. Opperman*, [780 A.2d 714, 718 (Pa.Super.2001), *appeal denied*, 568 Pa. 617, 792 A.2d 1253 (2001).]

*Commonwealth v. Keenan*, 853 A.2d 381, 383 (Pa.Super.2004) (emphasis added).

¶ 14 Pursuant to Section 1106, in the trial court's original sentencing order, it directed restitution be made to the Fund since the Fund had already made payments to Michael Clark through the Phillipses. The trial court supported this award as follows:

> At the time of the sentencing hearing on November 7, 2003, this Court was informed that the Crime Victim's Compensation Fund had not been reimbursed yet for the $20,000 award paid out to the victim. In accordance with 18 Pa.C.S.A. § 1106, this Court ordered [appellant] to pay $20,000 in restitution to the Crime Victim's Compensation Fund at claim number 200301051. The Crime Victim's Compensation Fund is considered a victim if compensation has been paid by the Crime Victim's Compensation Fund to the victim. 18 Pa. C.S.A. § 1106(h). It is clear that the Crime Victim's Compensation Fund is an appropriate recipient of mandatory restitution for amounts it has advanced to crime victims in Pennsylvania. The statute indicates the intent of restitution regarding the Crime Victim[']s Compensation Fund is to replenish the compensation fund by the amounts previously awarded to victims of crime. The restitution order of November 7, 2003, was made prior to any reimbursement of the Crime Victim's Compensation Fund by the recipient of the award.

Trial court opinion, 5/23/05 at 3.

¶ 15 However, our concern with the trial court's analysis is that while the Fund may be substituted as the "victim" to receive mandatory restitution under Section 1106(h), this is only the case "if compensa-

---

was taken, nor post-sentence motions filed, he could still challenge the validity of his plea in post-conviction collateral proceedings). "It is firmly established that a plea of guilty generally amounts to a waiver of all defects and defenses except those concerning the jurisdiction of the court, the *legality* of sentence, and the validity of the guilty plea." *Commonwealth v. Dalberto*, 436 Pa.Super. 391, 648 A.2d 16, 18 (1994), *appeal denied*, 540 Pa.

594, 655 A.2d 983 (1995), *cert. denied*, 516 U.S. 818, 116 S.Ct. 75, 133 L.Ed.2d 34 (1995) (citations omitted) (emphasis in original). A defendant may appeal as of right the legality of sentence. 42 Pa.C.S.A. § 9781(a); *Reichle*, *supra* at 1142. Therefore, we determine that although appellant entered into a negotiated guilty plea, her challenge to the legality of the restitution order remains cognizable on appeal and is not waived.

tion has been paid by the Crime Victim's Compensation Fund to the victim" as defined by Section 1106.

■ ¶ 16 Having reviewed the facts of this case, as well as the relevant statutory language and case law, we are compelled to a conclusion that the decedent's son, Michael Clark, was not a "direct victim" of the crime entitled to restitution under Section 1106. The statute requires that a victim's loss be caused directly by a defendant's criminal conduct rather than a loss consequential to such conduct. Though Michael was *in utero* at the time of the accident, there was no evidence presented that he suffered any physical injuries as a result of appellant's conduct. Michael Clark's loss of support resulting from the death of his father, Glenn Clark, and the injuries to his mother, Annette Clark, while tragic, is an indirect consequence of appellant's criminal conduct.[3]

> 'For over a decade the courts of this Commonwealth have struggled with the issue of whether parties other than the 'direct' victim of the crime are entitled to restitution under 18 Pa.C.S. § 1106.' *Commonwealth v. Runion*, 541 Pa. 202, 662 A.2d 617, 619 (1995). Underlying this issue is the apparent policy that restitution is not meant to be a reimbursement system to third parties but rather a compensation system to 'victims' as that term is defined by the statute. *See Commonwealth v. Figueroa*, 456 Pa.Super. 620, 691 A.2d 487, 491 (1997).

*Keenan, supra* at 384.

¶ 17 While not directly on point with the unusual facts of this case, we find *Opperman, supra*, to be instructive. James Op-

perman pled guilty to DUI and homicide by vehicle while DUI. State Farm Insurance Company sought restitution to compensate it for the amount it paid pursuant to the wrongful death and survival actions brought by the deceased victim's parents. *Id.* at 717. State Farm alleged that it was one of Opperman's victims pursuant to Section 1106(h), which defines "victim" to include "any insurance company that has compensated the victim for loss under an insurance contract." *Id.* As part of his sentence, Opperman was ordered to pay $44,500 to State Farm. Opperman argued on appeal that the proceeds by State Farm were direct payments to third parties, not to the victim himself. *Id.*

¶ 18 In holding that it was error for the trial court to order restitution to State Farm, this court stated:

> [I]n the case *sub judice*, the insurance company paid damages pursuant to insurance contracts held by the *victim's mother* for damages *she and her husband* sustained as a result of the victim's death. The contract was not with the victim himself. Nor are the parents' damages awarded through the estate, but they are their own damages as a result of their son's death. Thus, we agree with Appellant's assertion that the monies State Farm attempts to collect from him were actually tendered to third parties not contemplated by the definition of victim in 18 Pa.C.S.A. § 1106 nor 42 Pa.C.S.A. 9721.

*Id.* at 720 (emphasis in original).

■ ¶ 19 "While reality dictates that the victim's parents were, in fact, victimized when their son was killed by Appel-

---

3. We note that restitution cannot be awarded for general damages such as pain and suffering. 28 Standard Pa. Practice 2d § 137:186; *Opperman, supra*, citing *Commonwealth v. Cannon*, 387 Pa.Super. 12, 563 A.2d 918 (1989). However, an order of restitution under Section 1106 does not debar the victim from pursuing any available private remedies, including wrongful death and survival actions.

lant's criminal act, they are not victims as provided for by our legislature in the Crimes and Sentencing Codes." *Id.* at 719. Similarly, here, although Michael Clark has been undoubtedly "victimized" by appellant in the tragic loss of his parents, he is not a victim for restitution purposes as provided by statute. The mandatory payment of restitution pursuant to Section 1106 of the Crimes Code is limited to the direct victim and not to third parties, including family members, who shoulder the burden of the victim's losses. *Keenan, supra* at 384, citing *Commonwealth v. Balisteri,* 329 Pa.Super. 148, 478 A.2d 5, 10 (1984); *Opperman, supra.*

■ . ¶ 20 It is not disputed that Michael is a victim/claimant for purposes of the CVA[4] and would have been entitled to an award for loss of support, had he not received payments under the insurance settlement and Social Security benefits in excess of the maximum allowable award of $20,000.[5]

¶ 21 As set forth in *Hoffman v. Pennsylvania Crime Victim's Compensation Board,* 46 Pa.Cmwlth. 54, 405 A.2d 1110, 1111 (1979):

[T]he crime victim's compensation program was intended by the Legislature to compensate innocent victims of crime for economic losses sustained by them for which they receive no other compensation. Within limitations set forth in the Act, the program makes up the difference between what the victim lost economically and what a victim received economically as a result of a crime.

■ ¶ 22 "The declared purpose of the Act is to promote the public welfare by establishing a means of providing for the financial losses of the innocent victims of a crime or their surviving dependents." *Boyd by Coto v. Pennsylvania Crime Victim's Compensation Board,* 95 Pa.Cmwlth. 15, 504 A.2d 415, 416 (1986). However, payments made by the Fund are subject to reimbursement and/or reduction if other sources of support are available. *See, e.g., Boyd, supra* (where guardian/petitioner of dependent child of deceased crime victim filed a claim with the Board on behalf of the child for loss of support, maximum award available reduced to zero by the amount of Social Security petitioner receives on behalf of the child).

4. *See* 18 P.S. § 11.103, Definitions (the term "victim" includes family members of a homicide victim).

5. The CVA, provides, in relevant part:
   An award made for loss of earnings or support shall, unless reduced pursuant to other provisions of this chapter, be in an amount equal to the actual loss sustained. The following shall apply:
   ....
   (iii) In the case of death of a direct victim or intervenor, the aggregate award shall not exceed $20,000.
   18 P.S. § 11.707(b)(2)(iii).
   Except as otherwise provided in this act, an award made under this chapter shall be reduced by the amount of any payments received or to be received by the claimant as a result of the injury:

(1) from or on behalf of the individual who committed the crime;
(2) under any insurance or health and welfare programs, including those mandated by law;
(3) under any contract of insurance wherein the claimant is the beneficiary;
(4) from public funds;
(5) as an emergency award under section 706;
(6) under any pension program, including those providing for disability or survivor's benefits; or
(7) under a settlement or award made by or on behalf of a party alleged to be responsible in whole or in part for the injury, without regard to the party's criminal culpability.
18 P.S. § 11.707(e).

¶ 23 As illustrated by the facts of this case, a "claimant" for purposes of the CVA is not necessarily a "victim" entitled to mandatory restitution under Section 1106. In switching the recipient of the $20,000 from the Fund to the Phillipses,[6] the trial court appears to regard these two separate and distinct statutes, with different purposes and differing definitions of who qualifies as a "victim," to be interchangeable. However, appellant could only have been required to reimburse the Fund under Section 1106(c)(1)(i)[7] for compensation paid to the direct victims, Glenn Clark[8] and Annette Clark. In the case *sub judice*, the Fund did not make any payments to the direct victims of appellant's crimes. Rather, Michael was a "claimant" entitled to loss of support (subject to the CVA's offset provisions, as discussed *supra*) under Section 11.103 of the Act (family member of a homicide victim).

¶ 24 Given our disposition of this case, we are also constrained to agree with appellant that she is entitled to the return of whatever monies she has turned over to the clerk of courts' office pursuant to the amended $20,000 restitution order to the Phillipses. This would, of course, include the $2,100 that was previously paid by appellant for purposes of reimbursing the Fund. Therefore, we will remand for the lower court to determine what that amount is and how it may be refunded to appellant.

¶ 25 Order vacated; remanded with instructions. Jurisdiction relinquished.

¶ 26 BOWES, J. concurs in the result.

6. Although, in its letter to the Phillipses, the Office of Victims' Services stated, "we will notify the Clerk of Courts to adjust the records so that restitution will revert to you," it is beyond cavil that the OVS has absolutely no authority to alter or amend an order of restitution.

7. "The court shall not reduce a restitution award by any amount that the victim has received from the Crime Victim's Compensation Board or other governmental agency but

shall order the defendant to pay any restitution ordered for loss previously compensated by the board to the Crime Victim's Compensation Fund ...." 18 Pa.C.S.A. § 1106(c)(1)(i).

8. It should also be noted that the estate of a deceased victim cannot make a claim under the CVA. *See Bradley v. Crime Victim's Compensation Board,* 153 Pa.Cmwlth. 630, 621 A.2d 1228 (1993).