J-S42023-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ANTHONY ASHFORD | : | |
| | : | |
| Appellant | : | No. 688 MDA 2025 |

Appeal from the Judgment of Sentence Entered April 16, 2025
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0002877-2022

BEFORE: OLSON, J., KING, J., and LANE, J.

MEMORANDUM BY KING, J.: **FILED DECEMBER 15, 2025**

Appellant, Anthony Ashford, appeals from the judgment of sentence entered in the Dauphin County Court of Common Pleas, following his negotiated plea of *nolo contendere* to simple assault.[1] We affirm.

The relevant facts and procedural history of this matter are as follows. On June 10, 2022, Rahn Jacobs was in his apartment in Steelton when he heard a knock at the door. Upon opening the door, he encountered Appellant, who rushed at him, threw a cable box at Mr. Jacobs, and engaged in a physical fight with him, leaving red marks on the side of Mr. Jacobs' face. Mr. Jacobs managed to subdue Appellant on the living room floor until police officers arrived on the scene. At the time, Appellant appeared to be under the influence of drugs and was bleeding from a large gash on his forehead. The

_____

[1] 18 Pa.C.S.A. § 2701.

altercation ultimately left a large blood stain on the living room carpet. Officers placed Appellant under arrest.

On February 26, 2025, Appellant entered a plea of *nolo contendere* to the charge of simple assault by mutual scuffle;[2] in return, the Commonwealth withdrew a charge of criminal trespass. On April 16, 2022, the matter proceeded to sentencing hearing. At the hearing, Mr. Jacobs testified that he had lost $334.00 for damage to personal items that were destroyed during the incident and to the door. Laura Armstrong, who had been in the process of purchasing the apartment building when the incident occurred,[3] testified that she paid $4,060.00 to have the carpet in the apartment replaced due to blood stain damage. At the conclusion of the hearing, the court sentenced Appellant to four months of probation, and ordered restitution in the amount of $325.00 to Mr. Jacobs, and $4,060.00 to Ms. Armstrong.

On April 28, 2025, Appellant timely filed a post-sentence motion, arguing that the $4,060.00 restitution constituted an illegal sentence. On April 30, 2025, the court denied Appellant's motion. On May 29, 2025, Appellant timely filed a notice of appeal. On June 3, 2025, the court ordered Appellant to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. On June 10, 2025, the court issued an amended Rule 1925(b) order.

---

[2] As a condition of the plea agreement, the Commonwealth amended the simple assault to a misdemeanor of the third degree.

[3] Ms. Armstrong closed on the property a week after the incident. (*See* N.T. Sentencing, 4/16/22, at 15).

On June 20, 2025, Appellant timely complied.

On appeal, Appellant raises the following issue for our review:

Whether the trial court erred in ordering restitution to the landlord who was not a victim of a personal injury crime, as [she was] not the landlord at the time of the crime, and is not a "victim" under the Crime Victim's Act?

(Appellant's Brief at 4).

Appellant argues that the court erred by ordering him to pay restitution to a landlord who, knowing there was damage to the property, purchased it **after** the criminal event. According to Appellant, only direct victims, as defined by statute, or other specific entities defined by statute may receive restitution. Appellant insists that Ms. Armstrong does not qualify as a victim who is entitled to receive restitution. Appellant concludes this portion of his sentence is illegal on these grounds, and this Court must vacate the award of restitution to her. We disagree.

Our review is guided by the following principles:

We note that [i]n the context of criminal proceedings, an order of restitution is not simply an award of damages, but, rather, a sentence. As such, [a]n appeal from an order of restitution based upon a claim that a restitution order is unsupported by the record challenges the legality, rather than the discretionary aspects, of sentencing. Accordingly, the determination as to whether the trial court imposed an illegal sentence is a question of law; our standard of review in cases dealing with questions of law is plenary. This case will also necessarily call upon us to engage in statutory construction, which similarly presents a pure question of law and also implicates the legality of ... sentence. Thus, our standard of review is *de novo* and our scope of review is plenary.

*Commonwealth v. Hunt*, 220 A.3d 582, 585 (Pa.Super. 2019) (internal

citations and quotation marks omitted).

Further:

Statutory interpretation is a question of law, therefore our standard of review is *de novo*, and our scope of review is plenary. In all matters involving statutory interpretation, we apply the Statutory Construction Act, 1 Pa.C.S. § 1501 *et seq.*, which provides that the object of interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly.

Generally, a statute's plain language provides the best indication of legislative intent. We will only look beyond the plain language of the statute when words are unclear or ambiguous, or the plain meaning would lead to a result that is absurd, impossible of execution or unreasonable. Therefore, when ascertaining the meaning of a statute, if the language is clear, we give the words their plain and ordinary meaning.

*Commonwealth v. Watts*, 283 A.3d 1252, 1255-56 (Pa.Super. 2022)

(internal citations and quotation marks omitted).

Initially, we note that

the primary purpose of restitution is rehabilitation of the offender by impressing upon him that his criminal conduct caused the victim's loss or personal injury and that it is his responsibility to repair the loss or injury as far as possible. For the principles underlying the restitution statute to be implemented, the victims must be made whole.

*Commonwealth v. Solomon*, 25 A.3d 380, 389 (Pa.Super. 2011) (citations

and quotations omitted).

The Crimes Code provides the following regarding restitution:

**§ 1106. Restitution for injuries to person or property**

**(a) General rule.--**Upon conviction for any crime wherein:

(1) property of a victim has been stolen, converted or otherwise unlawfully obtained, or its value substantially decreased as a direct result of the crime; or

(2) the victim, if an individual, suffered personal injury directly resulting from the crime,

the offender shall be sentenced to make restitution in addition to the punishment prescribed therefor.

\* \* \*

**(c) Mandatory restitution.--**

(1) The court shall order full restitution:

(i) Regardless of the current financial resources of the defendant, so as to provide the victim with the fullest compensation for the loss. The court shall not reduce a restitution award by any amount that the victim has received from the Crime Victim's Compensation Board or other government agency but shall order the defendant to pay any restitution ordered for loss previously compensated by the board to the Crime Victim's Compensation Fund or other designated account when the claim involves a government agency in addition to or in place of the board. The court shall not reduce a restitution award by any amount that the victim has received from an insurance company but shall order the defendant to pay any restitution ordered for loss previously compensated by an insurance company to the insurance company.

(ii) If restitution to more than one victim is set at the same time, the court shall set priorities of payment. However, when establishing priorities, the court shall order payment in the following order:

(A) Any individual.

(A.1) Any affected government agency.

(B) The Crime Victim's Compensation Board.

(C) Any other government agency which has provided reimbursement to the victim as a result of the defendant's criminal conduct.

(D) Any insurance company which has provided reimbursement to the victim as a result of the defendant's criminal conduct.

(E) Any estate or testamentary trust.

(F) Any business entity organized as a nonprofit or not-for-profit entity.

(G) Any other business entity.

\* \* \*

**(h) Definitions.--**As used in this section, the following words and phrases shall have the meanings given to them in this subsection:

\* \* \*

**"Business entity."** A domestic or foreign:

(1) business corporation;

(2) nonprofit corporation;

(3) general partnership;

(4) limited partnership;

(5) limited liability company;

(6) unincorporated nonprofit association;

(7) professional association; or

(8) business trust, common law business trust or statutory trust.

\*     \*     \*

**"Injury to property."** Loss of real or personal property, including negotiable instruments, or decrease in its value, directly resulting from the crime.

\*     \*     \*

**"Property."** Any real or personal property, including currency and negotiable instruments, of the victim.

**"Restitution."** The return of the property of the victim or payments in cash or the equivalent thereof pursuant to an order of the court.

**"Victim."** As defined in section 103 of the act of November 24, 1998 (P.L. 882, No. 111), known as the Crime Victims Act. The term includes an affected government agency, the Crime Victim's Compensation Fund, if compensation has been paid by the Crime Victim's Compensation Fund to the victim, any insurance company that has compensated the victim for loss under an insurance contract and any business entity.

18 Pa.C.S.A. § 1106 (footnotes omitted).

Section 11.103 of the Crime Victim's Act defines "victim" as:

(1) A direct victim.

(2) A parent or legal guardian of a child who is a direct victim, except when the parent or legal guardian of the child is the alleged offender.

(3) A minor child who is a material witness to any of the following crimes and offenses under 18 Pa.C.S. (relating to crimes and offenses) committed or attempted against a member of the child's family:

Chapter 25 (relating to criminal homicide).

Section 2702 (relating to aggravated assault).

Section 3121 (relating to rape).

- 7 -

(4) A family member of a homicide victim, including stepbrothers or stepsisters, stepchildren, stepparents or a fiancé, one of whom is to be identified to receive communication as provided for in this act, except where the family member is the alleged offender.

18 P.S. § 11.103. "A '[d]irect victim' is defined by the same section as '[a]n **individual** against whom a crime has been committed or attempted and who as a direct result of the criminal act or attempt suffers **physical or mental injury, death** or the **loss of earnings** under this act.'" *Commonwealth v. Veon*, 637 Pa. 442, 465, 150 A.3d 435, 449 (2016) (emphasis in original). *See also* 18 P.S. § 11.103 (for definition of "direct victim").

Therefore, this Court has observed:

[T]he sentencing court is statutorily required to impose restitution under § 1106(a) when the Commonwealth has established that the defendant committed a crime, the victim suffered injury to person or property, and there exists a direct causal nexus between the crime of which defendant was convicted and the loss or damage suffered by the victim. *See* 18 Pa.C.S. § 1106(a); *see also Commonwealth v. Pappas*, 845 A.2d 829, 842 (Pa.Super. 2004) (holding that restitution under § 1106(a) may be imposed only for those crimes to property or person where the victim suffered a loss that flows from the conduct that forms the basis of the crime for which the defendant is held criminally accountable).

*Commonwealth v. Weir*, 201 A.3d 163, 170-71 (Pa.Super. 2018), *aff'd*, 662 Pa. 402, 239 A.3d 25 (2020).

Instantly, the trial court observed:

As part of Appellant's sentence, the court ordered restitution to Laura Armstrong in the amount of $4,060 for damages to the apartment following the crime committed by Appellant on June 10, 2022. Ms. Armstrong testified at the hearing

that she is currently the property owner/landlord of the apartment in which the crime occurred. In his post-sentence motion, counsel for Appellant argued that Ms. Armstrong is not a "direct victim" of the behavior that led to Appellant's criminal conviction and, therefore, an award of restitution to her as part of Appellant's sentence is illegal.

In addressing mandatory restitution, specifically priority of restitution payments to victims, section 1106(c)(1)(ii)(G) lists "any other business entity." Therefore, a plain reading of the statute allows a landlord to recover in criminal cases, provided there is a direct causal connection between the criminal conduct and the damage, and the restitution amount is adequately supported by evidence. The restitution statute obviously envisioned awards beyond those to direct victims by including the different entities listed, including insurance companies who are certainly not victims.

Here, Appellant entered a *nolo contendere* plea to simple assault on February 26, 2025. During the restitution hearing, Laura Armstrong presented a receipt for carpet she had replaced as a result of Appellant's crime. The carpet required replacement due to blood staining that happened as a result of the June 10, 2022 incident.

Appellant may argue that because Ms. Armstrong was not the landlord at the time of the incident, she is not entitled to relief. Ms. Armstrong was in the process of purchasing the apartment building when the June 10th incident occurred. Appellant would suggest that Ms. Armstrong could have chosen not to purchase the building thereby preventing the pecuniary loss to replace the damaged carpet. This argument is disingenuous. The policy behind award restitution, in part, is to assign financial responsibility for an offender's criminal behavior. Here, the carpet was damaged as a direct result of Appellant's behavior, for which he was convicted. Certainly, restitution could have been ordered to Mr. Jacobs, the tenant, but ordering it to the landlord who was the party that expended the funds to make the apartment habitable makes much more sense and complies with the law. While Ms. Armstrong was technically not the owner of the building at the time, she was in the process of purchasing the building and public policy would

- 9 -

> dictate that Appellant should not avoid responsibility over a technicality. Further, as the new landlord she would have the responsibility of replacing the carpet and making the apartment livable for any tenant.
>
> Also the plain language 42 Pa.C.S.[A §] 9763(10) [relating to conditions of probation] stresses that a condition of probation can be restitution for loss or damage as a result of a crime. There is no qualifying or limiting language in that statute. As the restitution award was for damage that was caused as a direct result of Appellant's criminal conduct, the award was proper.

(Trial Court Opinion, 7/18/25, at 3-5) (some citations omitted).

We agree with the trial court that it was permitted to award Ms. Armstrong restitution. The sentencing court is **required** to impose restitution where the Commonwealth has established the "defendant has committed a crime, the victim suffered injury to person or property, and there exists a direct causal nexus between the crime of which the defendant was convicted and the loss or damage suffered by the victim." *Weir, supra* at 170-71. Here, Appellant entered a plea to simple assault, establishing his guilt for the commission of a crime. As a result of that assault, Appellant bled on Mr. Jacobs' floor, necessitating the replacement of the carpet. Therefore, there was an injury to the property. Further, because the damage to the carpet would not have occurred outside of Appellant's bleeding on it, the Commonwealth established the required causal nexus to the damage.

Although Appellant claims that Ms. Armstrong does not constitute a victim for purposes of the restitution statute, we disagree with his analysis. The statute clearly provides the following. First, restitution is required where

- 10 -

real property of the victim has had its value decreased as a result of a crime. *See* 18 Pa.C.SA. § 1106. Second, both Section 1106, as well as Section 11.103, provide that restitution may be ordered to individuals, as well as a list of various business entities. *See* 18 Pa.C.S.A. § 1106; 18 P.S. § 11.103. Section 11.103 further defines "victim" as "a direct victim," **or an individual** who suffered a loss of earnings under this act. *See Veon, supra*; 18 Pa.C.S.A. § 11.103.

Despite Appellant's arguments to the contrary, the statute does **not** provide that the ownership of the property must be established at the time of the crime or provide any other time frame for ownership.[4] Here, Ms. Armstrong was in the process of purchasing the building when the crime occurred. The value of the building decreased as a result of Appellant's

_____

[4] For example, Appellant cites in support of his position *Commonwealth v. Langston*, 904 A.2d 917 (Pa.Super. 2006), *overruled in part* by *Commonwealth v. Holmes*, 155 A.3d 69, 85-86 (Pa.Super. 2017). In *Langston*, this Court held that the unborn child of a father who was killed in a car accident and a mother who was rendered comatose as a result of that accident, was not a "direct victim" of the crime. *See Langston, supra* at 923. This Court held that although the child was *in utero* at the time of the accident, there was no testimony he had suffered physical injuries at the time of the accident. *See id.* The death of his father and the injuries to his mother were "indirect consequences" of the defendant's criminal conduct, and thus, the child could not receive restitution. *Id.* Appellant attempts to analogize *Langston* to the instant matter based on the fact that Ms. Armstrong had not yet purchased the property at the time of the crime. (*See* Appellant's Brief at 18-19). However, *Langston* stands for the proposition that there must be "direct consequences" of the criminal conduct to award restitution, which there were in this instance: Ms. Armstrong was forced to pay to replace the carpet bloodied by Appellant during the assault. Thus, *Langston* is distinguishable to the case at bar.

actions. After obtaining ownership of the building, Ms. Armstrong spent money to replace the carpet, remedy the injury, and as a result suffered a loss of earnings. To effectuate the purpose of the statute, namely, to remedy the loss and make the victim whole, it was appropriate to order restitution. *See Solomon, supra*. Therefore, the court did not err by ordering restitution to Ms. Armstrong. *See Hunt, supra*. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/15/2025