691 A.2d 487

COMMONWEALTH of Pennsylvania

v.

Dolores FIGUEROA, Appellant.

COMMONWEALTH of Pennsylvania

v.

Burton David PORTER, Appellant.

COMMONWEALTH of Pennsylvania

v.

Robert Irvin FERREE, Appellant.

Superior Court of Pennsylvania.

Submitted Aug. 26, 1996.

Filed March 18, 1997.

William R. Carroll, Somerset, for appellants.

Jerry L. Spangler, Assistant District Attorney, Somerset, for Commonwealth, appellee.

Before TAMILIA, SAYLOR and OLSZEWSKI, JJ.

TAMILIA, Judge.

Appellants, Dolores Figueroa, Burton David Porter and Robert Irvin Ferree, take this appeal from the judgments of sentence entered April 3, 1996 following their pleas of guilty to charges stemming from an incident which occurred on October 15, 1995 while all three were incarcerated in the State Correctional Institution of Somerset. Apparently, the victim, also an inmate, slapped appellant Figueroa, who subsequently requested fellow inmate Porter to "take care" of the victim. An altercation ensued involving the victim, Porter and Ferree in which the victim died as the result of blunt force trauma to the head.

On March 1, 1996, Porter pled guilty to involuntary manslaughter and Figueroa pled guilty to solicitation to commit assault; whereas, Ferree pled guilty to involuntary manslaughter on March 4, 1996. Sentencing occurred on April 3, 1994 in which Porter and Ferree each received two and one-half (2–1/2) to five (5) years' imprisonment and Figueroa received one (1) to two (2) years' imprisonment. Additionally, all three appellants were sentenced to pay, jointly and severally, restitution to the State Correctional Institution of Somerset in the amount of $51,314.83 for medical and hospital expenses arising out of the treatment of the victim from the date of the assault, October 15, 1995, until his death on October 20, 1995.

On appeal to this Court, appellants contend the trial court committed an error of law imposing restitution as the Department of Corrections is not a "victim" as defined by 18 Pa.C.S. § 1106(h) which defines "victim" as "[a]ny person, except an offender, who suffered injuries to his person or property as a direct result of the crime." In addition, appellants rely upon *Commonwealth v. Runion*, 541 Pa. 202, 662 A.2d 617 (1995), for the proposition that an agency of the Commonwealth of Pennsylvania simply is not an appropriate victim to whom an award of restitution is made.

Initially, we note the trial court, in reaching its decision to impose restitution relied on 18 Pa.C.S. § 1106(c)(1) **Mandato-**

**ry Restitution,**[1] which provides:

(1) The court shall order full restitution:

(i) Regardless of the current financial resources of the defendant, so as to provide the victim with the fullest compensation for the loss. The court shall not reduce a restitution award by any amount that the victim has received from the Crime Victim's Compensation Board or other governmental agency but shall order the defendant to pay any restitution ordered for loss previously compensated by the board to the Crime Victim's Compensation Fund or other designated account when the claim involves a government agency in addition to or in place of the board. The court shall not reduce a restitution award by any amount that the victim has received from an insurance company but shall order the defendant to pay any restitution ordered for loss previously compensated by an insurance company to the insurance company.

(ii) If restitution to more than one person is set at the same time, the court shall set priorities of payment.

However, when establishing priorities, the court shall order payment in the following order:

(A) The victim.

(B) The Crime Victim's Compensation Board.

(C) Any other government agency which has provided reimbursement to the victim as a result of the defendant's criminal conduct.

(D) Any insurance company which has provided reimbursement to the victim as a result of the defendant's criminal conduct.

The court specifically looked at the amended section (c)(1)(ii)(C) and held the following:

Although the statute fails to define the phrase "which has provided reimbursement to the victim", we find that a common sense reading requires us to conclude that the Department qualifies as having provided reimbursement to the victim. There is no dispute that the decedent was a

1. This section was amended May 3, 1995, effective in sixty (60) days.

"victim" as that term is defined in the statute. Nor is there any dispute that the Department has expended this sum of money to provide medical treatment to the victim.

(Slip Op., Cascio, J/, 6/6/96, p. 3.)

To gain a better understanding of the legislative intent, the trial court thereafter looked to the language of subsection (c)(1)(i), specifically, "but shall order the defendant to pay any restitution ordered for loss previously compensated by the board to the Crime Victim's Compensation Fund or other designated account when the claim involves a government agency in addition to or in place of the board", and found it to be confusing at best. However, the trial court, reading this subsection in conjunction with subsection (c)(1)(ii)(C), determined the court is *required* to order these defendants to make restitution to the Department as another "designated account when the claim involves a government agency in addition to or in place of the board."

The primary purpose of restitution is rehabilitation of the offender by impressing upon him that his criminal conduct caused the victim's personal injury and that it is his responsibility to repair the injury as far as possible. *Runion, supra.* The imposition of restitution is within the sound discretion of the sentencing court and must be supported by the record. *Id.* After our review of the record, we find the facts to parallel that of *Runion* and thus are constrained to reverse the trial court decision based on the rationale set forth by our Supreme Court in *Runion.*

*Runion,* which was argued before but decided after the effective date of the amendments to section 1106, addresses the issue of whether the Department of Public Welfare may be considered a "victim" under section 1106 so as to be entitled to restitution for the costs it incurred covering the medical expenses of a victim who was on public assistance at the time she was injured. Our Supreme Court, relying on the previous definition of "victim", held that it is for the Legislature to expand the meaning of the term "victim" to include government agencies of this Commonwealth, as the Department of

Public Welfare is not a "person" and as such may not be considered a victim. Specifically, the Court held a government agency may not be a victim for the purposes of restitution under the Crimes Code and it is the sole responsibility of the Legislature to expand the definition of "victim". Furthermore, we note the revised definition of "victim" simply expands the definition to include "the Crime Victim's Compensation Fund if compensation has been paid by the [Fund] to the victim and any insurance company that has compensated the victim for loss under an insurance contract." 18 Pa.C.S. § 1106(h). "Any other government agency which has provided reimbursement to the victim as a result of the defendant's criminal conduct", section 1106(c)(1)(ii)(C), does not extend the coverage of restitution to *all* government agencies required to provide services to victims. Such service, whether it be hospital care as in this case, care of a criminally neglected or abused child (CYS), a fire department's costs to put out a fire caused by arson, or the cost of an ambulance and emergency treatment due to assaults, etc., is outside the limited scope of that section.

Reimbursement, in the context of subsection ii(C), means to reimburse in the classic sense which, by definition, is "[t]o pay back, to make restoration, to repay that expended; to indemnify, or make whole." Black's Law Dictionary, (5th ed.) In other words, the governmental agency must have compensated the victim in a monetary fashion as a result of the loss of "property [which] has been stolen, converted or otherwise unlawfully obtained, or its value substantially decreased as a direct result of the crime, or wherein the victim suffered personal injury directly resulting from the crime[.]" 18 Pa.C.S. § 1106(a). Other government agencies, similar to the Crime Victim's Compensation Board, that may qualify are those which specifically provide funds to the victim to compensate for the loss, such as the Supreme Court's Pennsylvania Lawyers Fund for Client Security. In enlarging the category to other government agencies which provide compensation to victims and insurance companies that do likewise, the Legislature never intended to include the numerous governmental

agencies which provide social, medical and supportive services to victims of crime. The victim is not being given *compensation* by such agencies and the agencies are not entitled to restitution as reimbursement for the service. Here, the victim suffered the most egregious loss of all, that of his life, for which no financial compensation was given by the Department of Corrections. Medical care of an injured prisoner is an entitlement, not compensation. As such, the Department is not reimbursable pursuant to 18 Pa.C.S. § 1106, **Restitution for injuries to person or property**. Clearly, the amendment did not intend to include the Department of Corrections, as a government agency entitled to reimbursement, and thus, in accordance with *Runion*, the Department cannot be deemed a victim under section 1106.

The dissent's view far exceeds the minimal changes enacted by the Legislature in the restitution section of the Criminal Code. To implicate the myriad of governmental agencies which provide services to people, *as the dissent conveniently ignores*, as being entitled to *reimbursement* would create chaos in an already difficult restitution system. The dissent would have the court responsible for reimbursement to Children and Youth Services, mental health agencies, every hospital and clinic in Pennsylvania, the Departments of Welfare, Education and Corrections, the Department of Health and others of the more than 230 departments under state control in Pennsylvania. See General Index to P.S. and Pa.C.S. under Departments. All of these agencies, in one form or another, receive state and/or federal aid and all, at one time or another, may be impacted by additional costs to service a victim.

The section on restitution, 18 P.S. § 1106, reads in its heading, "Restitution for injuries to person or property". Under subsection (h), **Definitions**, restitution is defined: "Restitution: The return of the property of the victim or payment in cash or the equivalent thereof pursuant to an order of court." The definition of victim is "[a]ny person, except an offender, who suffered injuries to his person or property as a direct result of the crime." The 1995 amendments to this section expanded the term "victim" to include

the Crime Victims Compensation Fund and any insurance company that has compensated a victim for loss under any insurance contract. In each case, they receive reimbursement for direct payment made to a victim which the victim could have received as restitution from the defendant under the act.

Restitution was not meant to be a reimbursement system to government but a compensation system to victims identified as such in the definitional section of the statute. The dissent would change the entire thrust of restitution from compensating victims (or reimbursement to those private or public agencies who compensate victims by insurance or quasi insurance) to a pure reimbursement system for costs involved in treating or caring for a victim. As such, it totally rewrites the legislation and imposes a burden on the court restitution collection system which it cannot support and for which it was not intended.[2]

Judgment of sentence as to the Order of restitution against each of the named appellants is hereby vacated.

Jurisdiction relinquished.

SAYLOR, J., concurs.

OLSZEWSKI, J., dissents.

SAYLOR, Judge, concurring.

I join in the decision to vacate the order of restitution because I conclude, as does Judge Tamilia, that the sums

**2.** While the Dissenting Opinion in footnote 1 would disclaim application of the Prison Medical Service Act, it would have this Act guide us toward a conclusion that any government services, which in some way benefit a victim of a crime, should be reimbursable to the government agency by restitution from the defendant. This conclusion cannot be reached at this time and, in fact, recently, in *Commonwealth v. Yanoff,* 456 Pa.Super. 222, 690 A.2d 260 (1997), a panel of this Court, relying on *Commonwealth v. Runion,* 541 Pa. 202, 662 A.2d 617 (1995), held that a restitution order to the Bureau of Laboratory and Communication Services (a state bureau) was improper and reversed that portion of the sentence, while allowing restitution for burial expenses of the victim to the victim's parents. *Runion* remains a strong statement against restitution to government agencies unless it can be proven that the agency was a victim or was intended by 18 Pa.C.S. § 1106, **Restitution for injuries to person or property,** to be a beneficiary.

expended by the Department of Corrections for the victim's medical care did not constitute "reimbursement [provided by a government agency] to the victim as a result of the defendant's criminal conduct" within the meaning of the restitution statute as recently amended (effective July 3, 1995). Accordingly, such sums are not recoverable as restitution in a criminal proceeding.

Although not applicable to this case, the recently enacted Prison Medical Services Act (effective May 16, 1996), cited in the dissent, appears to provide that an inmate may be required to pay a fee to the Department of Corrections for medical services provided because of injuries which he inflicts on a fellow inmate.

OLSZEWSKI, Judge, dissenting.

I believe that the trial court in the instant matter was authorized to require restitution compensation to the Department of Corrections. Therefore, I respectfully dissent.

Initially, I believe that the majority has misapprehended the predominate issue in this case. This case does not turn upon whether the Department of Corrections qualifies as a "victim" pursuant to subsection (c)(1)(ii)(A) of the restitution statute. Rather, in accordance with the cannons of statutory construction, this case requires the Court to interpret **all** of the provisions of section (c) of 18 Pa.C.S.A. § 1106. *See e.g.,* 1 Pa.C.S.A. § 1922 ("The General Assembly intends the entire statute be effective and certain."); *Commonwealth v. Lopez,* 444 Pa.Super. 206, 209–11, 663 A.2d 746, 748 (1995) (When construing one section of a statute, courts must read that section with reference to, and in light of, other sections because there is a presumption that the General Assembly intended the entire statute to be effective.).

As such, I strenuously disagree with those portions of the majority opinion which rely upon *Commonwealth v. Runion,* 541 Pa. 202, 662 A.2d 617 (1995). *See, e.g.,* majority opinion at 491 ("[W]e find the facts to parallel that of *Runion* and thus are constrained to reverse the trial court decision based on the

rationale set forth by our Supreme Court in *Runion.*" "[I]n accordance with *Runion,* the Department cannot be deemed a victim under section 1106."). In *Runion,* our Supreme Court held that a Commonwealth entity, because it is not a person, cannot be considered a "victim" within the meaning of the restitution statute. *Runion,* 541 Pa. at 206–08, 662 A.2d at 619. Clearly, as a Commonwealth entity, the Department cannot qualify for restitution based upon its status as a victim.[1]

A subsequent amendment to § 1106 redefined "victim" to include, under the appropriate circumstances, the Crime Victim's Compensation Fund and insurance companies. The amendments to § 1106 were, however, more expansive than merely redefining the term "victim." In addition to that alteration, the amendments expanded the class of entities eligible for restitution compensation.

Specifically, aside from the victim, the Crime Victim's Compensation Board, insurance companies and "any government agency which has provided reimbursement to the victim as a result of the defendant's criminal conduct," may now receive restitution from the defendant. 18 Pa.C.S.A. § 1106(c). In the instant matter, the entity purportedly eligible for restitution is the Department of Corrections.

Therefore, the issue to be decided is not whether the Department qualifies as a "victim" pursuant to *Runion,* but whether it "provided reimbursement to the victim as a result of the defendant's criminal conduct." 18 Pa.C.S.A.

---

1. In an effort to support the general, overbroad, proposition that restitution awards cannot be made to governmental entities, the majority cites the recent Superior Court case of *Commonwealth v. Yanoff,* 456 Pa.Super. 222, 690 A.2d 260 (1997). Any reliance upon *Yanoff* is misleading and improper. While the effective date of amended § 1106 was nineteen days before the sentencing date in *Yanoff,* section (c) was not analyzed or interpreted at all in *Yanoff.* Indeed, far from discussing the potential applicability of section (c), the *Yanoff* Court reversed the restitution award to the Bureau of Laboratory and Communication Services "pursuant to the ruling in *Runion.*" (690 A.2d at 265). As the overriding issue in the instant matter concerns the applicability of amended section (c) to restriction awards made to governmental entities, *Yanoff* is neither instructive nor controlling.

§ 1106(c)(1)(ii)(C). If so, appellants must indemnify the Department regardless of the precedent established in *Runion.*

Section 1106 does not define the term "reimbursement." Interpretation is therefore guided by the Statutory Construction Act, 1 Pa.C.S.A. § 1501 *et seq.,* which requires that the words and phrases in statutes be construed according to their common usage and everyday understanding. *See, e.g.,* 1 Pa. C.S.A. § 1903; *San Van, Inc. v. School Dist. of Derry Township,* 160 Pa.Cmwlth. 483, 635 A.2d 254 (1993).

In addressing this issue, the majority holds that the term reimbursement requires that "the governmental agency must have compensated the victim in a monetary fashion" and that, because injured prisoners are entitled to medical care, the victim in the instant matter was not "reimbursed" within the meaning of § 1106. Majority opinion at 492.

The majority misses the point. While it is true that the Commonwealth has a duty to provide adequate medical facilities and treatment to incarcerated persons, *see, e.g., Dept. of Public Welfare v. Kallinger,* 134 Pa.Cmwlth. 415, 421–23, 580 A.2d 887, 891 (1990), it is an illogical extension of this established premise to then conclude that prison medical care must be provided at the state's expense. The mere fact that the state is required to provide a service does not mean that the service must be provided free of charge.

To the contrary, our courts have specifically held that "the correctional system is not a medical provider and should not be considered solely liable for the expense of treatment for every person who at some point is placed in the system." *Commonwealth v. Lyles,* 77 Pa.Cmwlth. 15, 18–19, 464 A.2d 712, 714 (1983). *See also Lyles,* 77 Pa.Cmwlth. at 18 n. 6, 464 A.2d at 713 n. 6 (noting that prisoner medical care costs may be defrayed by, *inter alia,* social security, medicare and medical assistance payments).

More recently, our General Assembly enacted the Prison Medical Services Act (Act No. 1996–40 S.B. No. 856, effective May 16, 1996). This Act, codified in 61 P.S. § 1011 *et seq.,* established a co-pay program requiring non-indigent inmates

to reimburse the Department of Corrections for all or part of certain medical expenses. Importantly, subsection 3(b), relating to fees, provides that "[i]n addition to other medical services provided to the inmate, an inmate may be required to pay a fee for medical services provided because of injuries the inmate inflicted upon himself **or another inmate**." 61 P.S. § 1013 (emphasis added). Finally, the Act permits the Department to collect the fees either while the prisoner is incarcerated or, by way of a civil action, after the inmate is released from prison. *See* 61 P.S. § 1015.[2]

Accordingly, I cannot agree with the majority that the General Assembly did not intend to permit restitution to the Department of Corrections because "[m]edical care of an injured prisoner is an entitlement, not compensation." Majority opinion at 493. As previously stated, while the access to adequate treatment may be a constitutionally protected right, there is no corresponding guarantee that the state will pay for such care where the criminal conduct causing such injury is directly and unequivocally traceable to a guilty party.

For these reasons, I believe that the amended restitution statute authorizes compensation to a government agency which has reimbursed a victim of criminal conduct either by direct monetary payment or though services rendered. To hold otherwise would refute the plain language of section (c), which permits government entities to seek restitution from those guilty of criminal acts. This statute squarely places the burden for restitution on those convicted of crimes, and not upon the courts or the consumers of government services.[3]

**2.** I note that the sentencing date in the instant matter was approximately six weeks prior to the effective date of the Prison Medical Services Act. I do not mean to imply that the Act itself is applicable to appellants. Rather, I cite the Act in an effort to ascertain the everyday understanding of the term "reimbursement" and in an attempt to demonstrate that prison medical care costs are not an entitlement.

**3.** The majority fails to recognize this crucial distinction. This dissent does not argue for the establishment of a general rule requiring restitution from all users of government services. This dissent merely argues that the General Assembly has clearly mandated that those who commit crimes causing harm to victims must pay restitution to, *inter alia,*

632

In enacting the amendments to § 1106, the General Assembly clearly intended for Commonwealth entities to be eligible for restitution of expenditures made on behalf of crime victims that were necessitated by the actor's criminal conduct. It is immaterial whether the expenditure was directly monetary or, instead, in the form of a service. This Court is bound to effectuate that intent.

In the instant case, appellants' intentional criminal conduct directly resulted in serious injuries to a fourth prisoner who, prior to his death, received medical treatment at S.C.I. Somerset totaling $51,314.83. While the victim was entitled to adequate medical treatment, the state was not commensurately required to provide that service free of charge.

When reviewing restitution orders, this Court has repeatedly held that the decision of whether to require restitution as a part of a defendant's sentence is within the sound discretion of the trial court. *See, e.g., Runion*, 541 Pa. at 206–08, 662 A.2d at 619. In exercising its discretion, the trial court must consider both the damage resulting from the perpetrator's actions and the amount that the offender can afford to pay. *Id.* It is no impediment to such an order, however, that defendant will be required to make substantial sacrifices in order to comply with the restitution order. *See, e.g., Commonwealth v. Stock*, 346 Pa.Super. 60, 76–77, 499 A.2d 308, 317 (1985); *Commonwealth v. Wood*, 300 Pa.Super. 463, 467–69, 446 A.2d 948, 950 (1982). Rather, such sacrifices are fully in accord with the purpose of the restitution statute; this is, to impress upon the perpetrator the magnitude of his or her criminal conduct. *Id.*

Having found that the trial court, after taking into consideration the particular facts of this case, was authorized pursuant to 18 Pa.C.S.A. § 1106(c) to order restitution to the Department of Corrections, I would affirm the judgment of the lower court.

government agencies who provide services to victims of their criminal conduct. This is a case-by-case determination.