**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Gregory Ricky BROWN, Appellant.**

Superior Court of Pennsylvania.

Argued March 12, 2008.

Filed July 16, 2008.

MaryJean Glick, Public Defender, for appellant.

Ryan T. Boop, Asst. Dist. Atty., for Com., appellee.

BEFORE: FORD ELLIOTT, P.J., STEVENS, ORIE MELVIN, LALLY–GREEN, KLEIN, BENDER, BOWES, GANTMAN, and SHOGAN, JJ.

OPINION BY LALLY–GREEN, J.:

¶ 1 Appellant, Gregory Ricky Brown, appeals from the judgment of sentence entered on January 23, 2006, as made final by a restitution order entered on May 16, 2006. We granted *en banc* review to determine whether Medicare is entitled to restitution under 18 Pa.C.S.A. § 1106. The trial court ruled that Medicare was entitled to restitution. We agree and therefore affirm.

¶ 2 The procedural history of the case is as follows. On January 23, 2006, Appellant pled guilty to one count of simple assault against Scott Rissell. On that date, the trial court imposed a sentence of two years' probation, a fine of $100.00, and restitution to be capped at $1,137.50.

¶ 3 On January 27, 2006, Appellant filed a motion to modify restitution. On March 15, 2006, the court granted the motion and reduced Appellant's restitution to $172.34. The court reasoned that Medicare had paid some of Mr. Rissell's medical expenses, and that Appellant was not required to make restitution to Medicare.

¶ 4 On March 24, 2006, the Commonwealth filed a timely motion to modify, arguing that Medicare was entitled to restitution under 18 Pa.C.S.A. § 1106. On May 16, 2006, following a hearing, the trial court reversed its earlier ruling and ordered Appellant to pay restitution to Medi-

care in the amount of $509.65.[1] This appeal followed.

¶ 5 Appellant raises one issue on appeal:

I. Did the trial court err in ordering Mr. Brown to pay $509.65 to Medicare, where Medicare is a government agency, and is not a victim entitled to restitution pursuant to 18 Pa.C.S. § 1106?

Appellant's Brief at 4.[2]

¶ 6 Appellant argues that the sentence is illegal because Medicare is not entitled to restitution. Appellant reasons that under 18 Pa.C.S.A. § 1106, Medicare is only entitled to restitution if it paid Mr. Rissell **directly;** instead, Medicare paid Mr. Rissell's medical providers. Appellant's Brief at 13.

¶ 7 Appellant contends that under the Crimes Code, the trial court had no authority to award restitution to Medicare. Thus, Appellant raises a nonwaivable challenge to the legality of the sentence. *Commonwealth v. Pleger,* 934 A.2d 715, 719 (Pa.Super.2007), *citing In the Interest of M.W.,* 555 Pa. 505, 725 A.2d 729, 731 n. 4 (1999). This issue of statutory construction is a pure question of law, subject to plenary and *de novo* review. *Commonwealth v. Bradley,* 575 Pa. 141, 834 A.2d 1127, 1131 (2003).

¶ 8 The Legislature has the authority to define, by statute, who is entitled to restitution. *Commonwealth v. Runion,* 541 Pa. 202, 662 A.2d 617, 620–621 (1995). Thus, our task is one of statutory interpretation. The rules of statutory construction are well settled:

Our task is guided by the sound and settled principles set forth in the Statutory Construction Act, including the primary maxim that the object of statutory construction is to ascertain and effectuate legislative intent. 1 Pa.C.S. § 1921(a). In pursuing that end, we are mindful that when the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit. Indeed, as a general rule, the best indication of legislative intent is the plain language of a statute. In reading the plain language, "words and phrases shall be construed according to rules of grammar and according to their common and approved usage," while any words or phrases that have acquired a "peculiar and appropriate meaning" must be construed according to that meaning. 1 Pa.C.S. § 1903(a).

However, when interpreting non-explicit statutory text, legislative intent

1. The court also ordered Appellant to pay restitution to Physician's Mutual Insurance Company in the amount of $172.34. Appellant does not contest this aspect of the order. Further, the record reflects that Mutual of Omaha Insurance company was a "financial conduit" for the Medicare payments. This does not alter the fact that Medicare was the true payor of the $509.65 at issue.

2. We see no timeliness concerns with this appeal. Appellant filed a timely post-sentence motion from the judgment of sentence. The trial court granted the motion within 120 days, pursuant to Pa.R.Crim.P. 720. The Commonwealth arguably could have appealed at that point. *See* Pa.R.Crim.P. 721, Official

Comment ("once a sentence has been modified or reimposed pursuant to a motion to modify sentence under this rule or Rule 720(B)(1)(a)(v), a party wishing to challenge the decision on the motion does not have to file an additional motion to modify sentence in order to preserve an issue for appeal, as long as the issue was properly preserved at the time the sentence was modified or reimposed.") Instead, the Commonwealth, now aggrieved by the trial court's order, filed its own timely motion to modify. The Rules of Criminal Procedure do not prohibit such a motion. The trial court disposed of this motion within 120 days. *See* Pa.R.Crim.P. 721. Appellant then filed a timely notice of appeal.

may be gleaned from a variety of factors, including, *inter alia:* the occasion and necessity for the statute; the mischief to be remedied; the object to be attained; the consequences of a particular interpretation; and the contemporaneous legislative history. 1 Pa.C.S. § 1921(c). Moreover, while statutes generally should be construed liberally, penal statutes are always to be construed strictly, 1 Pa.C.S. § 1928(b)(1), and any ambiguity in a penal statute should be interpreted in favor of the defendant.

Notwithstanding the primacy of the plain meaning doctrine as best representative of legislative intent, the rules of construction offer several important qualifying precepts. For instance, the Statutory Construction Act also states that, in ascertaining legislative intent, courts may apply, *inter alia,* the following presumptions: that the legislature does not intend a result that is absurd, impossible of execution, or unreasonable; and that the legislature intends the entire statute to be effective and certain. 1 Pa.C.S. § 1922(1), (2). Most importantly, the General Assembly has made clear that the rules of construction are not to be applied where they would result in a construction inconsistent with the manifest intent of the General Assembly. 1 Pa.C.S. § 1901.

*Commonwealth v. Shiffler,* 583 Pa. 478, 879 A.2d 185, 189–190 (2005) (some citations omitted).

¶ 9 Section 1106(c)(1)(ii) of the Crimes Code provides that the following entities and individuals are entitled to restitution:

(A) The victim;

(B) The Crime Victim's Compensation Board;

(C) **Any other government agency which has provided reimbursement to the victim as a result of the defendant's criminal conduct,** and

(D) Any insurance company which has provided reimbursement to the victim as a result of the defendant's criminal conduct.

18 Pa.C.S.A. § 1106(c)(1)(ii) (emphasis added). Thus, we must address whether Medicare is a "government agency which has provided reimbursement to the victim as a result of the defendant's criminal conduct."

¶ 10 It is undisputed that Medicare is a "government agency," and that it paid medical expenses "as a result of the defendant's conduct." The question is whether those payments constitute "reimbursement to the victim."[3] Appellant argues that since Medicare did not pay the victim directly, but just paid the victim's medical providers, Medicare has not provided "reimbursement **to** the victim."

■ ¶ 11 Initially, we note that the phrase "to the victim" is ambiguous because it could reasonably be construed to mean: (1) directly to the victim; or (2) indirectly, on the victim's behalf. Moreover, we recognize that "[w]hile strict con-

---

**3.** The issue we are to resolve is whether Medicare is entitled to restitution under § 1106(c)(1)(ii)(C). The issue is not whether Medicare is a "victim" as defined in 18 Pa. C.S.A. § 1106(c)(1)(ii)(A) or § 1106(h). For purposes of this case, Mr. Rissell is "the victim." *See* 18 Pa.C.S.A. § 1106(h); *Commonwealth v. Boyd,* 835 A.2d 812 (Pa.Super.2003) (further explaining the meaning of the term "victim"). Moreover, "reimbursement, in the

context of [18 Pa.C.S.A. § 1106(c)(1)(ii)(C) ], means to reimburse in the classic sense which, by definition, is 'to pay back, to make restoration, to repay that expended; to indemnify, or make whole.' Black's Law Dictionary (5th ed.). In other words, the governmental agency must have compensated the victim in a monetary fashion[.]" *Commonwealth v. Figueroa,* 456 Pa.Super. 620, 691 A.2d 487, 490 (1997).

struction of penal statutes is required ... courts are not required to give words of a criminal statute their narrowest meaning or disregard evident legislative intent." *Commonwealth v. Dickson,* 591 Pa. 364, 918 A.2d 95, 100 (2007) (citation omitted). Thus, we will not adopt the strictest possible interpretation if doing so would defeat the plain intent of the legislature. Again, we must bear in mind that the legislature "does not intend a result that is absurd, impossible of execution, or unreasonable; and that the legislature intends the entire statute to be effective and certain." *Shiffler.*

¶ 12 When viewed in that light, we hold that Medicare is entitled to restitution. In 1995, the legislature amended § 1106 to expand the class of those eligible for restitution. Prior to the amendments, only the "victim" was entitled to restitution, and the "victim" was defined in relevant part as a "person." *Runion.* The 1995 amendments defined the term "victim" more broadly; moreover, under proper circumstances, entities such as insurance companies, the Crime Victims Compensation Fund (CVCF), and government agencies may be entitled to restitution as well. 18 Pa.C.S.A. § 1106(c), (h) (amended effective July 3, 1995). In short, the legislature recognized that defendants should provide restitution not only to the victim directly, but to entities that incurred expenses on the victim's behalf. *See* 18 Pa.C.S.A. § 1106(c)(1)(i) (court "shall order full restitution" and shall not reduce the award by any amount that the victim has received from the CVCF, government agency, or insurance company; rather, the defendant shall pay restitution to those agencies for those amounts).

¶ 13 Second, and more importantly, Appellant's interpretation would lead to unreasonable and absurd results that would defeat the purpose of restitution and ignore the realities of health-care compensation. "[R]estitution does **not** seek, by its essential nature, the compensation of the victim[.]" *Pleger,* 934 A.2d at 720 (emphasis added). Rather, the primary purpose of restitution is to rehabilitate the offender by impressing on him the fact that his actions damaged the victim. *Id.* "In the end, restitution is not simply an award of damages, but, rather, a sentence." *Id.* The amount of restitution set by the court is related to the amount of damage sustained by the victim, but restitution is not itself a civil damage award. *Id.* "It is true that restitution helps the victim, but this fact is secondary to the reality that restitution is an aspect of sentencing imposed by the court on an offender in order to facilitate the administration of criminal justice." *Id.* Where the defendant has caused personal injury or property damage to the victim, restitution is mandatory. *Id., citing* 42 Pa.C.S.A. § 9721(c) and 18 Pa.C.S.A. § 1106(a).

¶ 14 Thus, the legislature clearly intended that offenders who cause personal injury or property damage to victims must be rehabilitated through restitution, regardless of the financial status of their victims. Hypothetically, if the medical providers had sent a bill directly to the victim, and the victim paid the bill, and Medicare reimbursed the victim, then Medicare would clearly be entitled to restitution under § 1106. The only difference between the instant case and the hypothetical is that Medicare skipped the middle step and efficiently paid the medical provider (the hospital) directly. There is simply no reasonable basis for treating the two scenarios differently.[4] Thus, consistent with legisla-

***

4. Indeed, the legislature could not possibly have intended Medicare recipients to begin

tive intent, we interpret the phrase "reimbursement to the victim" to include monetary payment to health care providers on the victim's behalf.

¶ 15 The three cases cited by Appellant do not compel a contrary result. First, in *Figueroa*, this Court held that the defendant was not required to reimburse the Department of Corrections for the cost of **medical services** that it provided to the victims of a prison assault. *Figueroa* does not directly control this case, because Medicare did not provide medical services. Rather, Medicare paid a medical provider directly for the medical services it gave to the victim, and for which the victim potentially could be financially responsible. This payment scheme meets the *Figueroa* Court's definition of "reimbursement" as "compensation to the victim in a monetary fashion."

¶ 16 Second, in *Boyd*, 835 A.2d at 818–819, this Court held that the defendant need not pay restitution to the Commonwealth for "buy money" that the Commonwealth used to purchase drugs from the defendant. The *Boyd* Court noted that

the Commonwealth was not a "victim" as defined in the restitution statute, and did not reimburse any victim of personal injury. *Boyd* is factually distinguishable because in the instant case, Medicare did reimburse the victim for personal injury.[5]

¶ 17 Third, Appellant cites *Commonwealth v. Keenan*, 853 A.2d 381 (Pa.Super.2004). In *Keenan*, a three-judge panel of this Court held that the defendant was not required to pay restitution directly to a victim's medical provider for services rendered, where apparently neither the victim nor any other entity had yet paid the provider for those services. *Id.* at 384, *citing, inter alia, Commonwealth v. Balisteri*, 329 Pa.Super. 148, 478 A.2d 5 (1984).[6] The instant case is factually distinguishable from *Keenan* for the same reason that it is factually distinguishable from *Figueroa*.

¶ 18 We hold that under the facts of this case, Medicare was entitled to reimbursement under § 1106.[7] Accordingly, we affirm the judgment of sentence.

¶ 19 Judgment of sentence affirmed.

paying their own medical bills in order to trigger a defendant's duty to pay restitution. Such a rule would place a new, extraordinary burden on crime victims and the health care system in general.

5. *Boyd, Keenan,* and *Figueroa* illustrate that the restitution statute cannot be read so broadly as to make a criminal defendant financially responsible for every conceivable loss that he causes. For other examples of this principle, *see Commonwealth v. Opperman*, 780 A.2d 714 (Pa.Super.2001) (defendant in homicide-by-DUI need not pay restitution to the victim's mother's insurer, because the victim's mother was not a "victim" under the restitution statute), *appeal denied*, 568 Pa. 617, 792 A.2d 1253 (Pa.2001); *Commonwealth v. Langston*, 904 A.2d 917 (Pa.Super.2006) (defendant need not pay restitution to the CVCF for expenses paid to guardian of the child of parents who died in an auto accident, where the child was not a "victim" under the restitution statute).

6. As in *Keenan*, the *Balisteri* Court disapproved of a restitution order to the extent that it required payment directly to a medical provider. The *Balisteri* Court noted prevailing law at the time "dis[approved] payments to third parties who assume payment of the victim's losses." *Id.* at 10 (citation omitted). We note that this broad statement from *Balisteri* was issued in 1984; it is obviously no longer good law in light of the 1995 amendments to the restitution statute.

7. For ease of reference, we quote the pertinent parts of the restitution statute in their entirety:

§ 1106. **Restitution for injuries to person or property**
(a) **GENERAL RULE.**—Upon conviction for any crime wherein property has been stolen, converted or otherwise unlawfully obtained, or its value substantially decreased as a direct result of the crime, or

wherein the victim suffered personal injury directly resulting from the crime, the offender shall be sentenced to make restitution in addition to the punishment prescribed therefor.

. . .

**(c) MANDATORY RESTITUTION.—**

(1) The court shall order full restitution:

(i) Regardless of the current financial resources of the defendant, so as to provide the victim with the fullest compensation for the loss. The court shall not reduce a restitution award by any amount that the victim has received from the Crime Victim's Compensation Board or other governmental agency but shall order the defendant to pay any restitution ordered for loss previously compensated by the board to the Crime Victim's Compensation Fund or other designated account when the claim involves a government agency in addition to or in place of the board. The court shall not reduce a restitution award by any amount that the victim has received from an insurance company but shall order the defendant to pay any restitution ordered for loss previously compensated by an insurance company to the insurance company.

(ii) If restitution to more than one person is set at the same time, the court shall set priorities of payment. However, when establishing priorities, the court shall order payment in the following order:

(A) The victim.

(B) The Crime Victim's Compensation Board.

(C) Any other government agency which has provided reimbursement to the victim as a result of the defendant's criminal conduct.

(D) Any insurance company which has provided reimbursement to the victim as a result of the defendant's criminal conduct.

(2) At the time of sentencing the court shall specify the amount and method of restitution. In determining the amount and method of restitution, the court:

(i) Shall consider the extent of injury suffered by the victim, the victim's request for restitution as presented to the district attorney in accordance with paragraph (4) and such other matters as it deems appropriate.

(ii) May order restitution in a lump sum, by monthly installments or according to such other schedule as it deems just.

(iii) Shall not order incarceration of a defendant for failure to pay restitution if the failure results from the offender's inability to pay.

(iv) Shall consider any other preexisting orders imposed on the defendant, including, but not limited to, orders imposed under this title or any other title.

(3) The court may, at any time or upon the recommendation of the district attorney that is based on information received from the victim and the probation section of the county or other agent designated by the county commissioners of the county with the approval of the president judge to collect restitution, alter or amend any order of restitution made pursuant to paragraph (2), provided, however, that the court states its reasons and conclusions as a matter of record for any change or amendment to any previous order.

(4) (i) It shall be the responsibility of the district attorneys of the respective counties to make a recommendation to the court at or prior to the time of sentencing as to the amount of restitution to be ordered. This recommendation shall be based upon information solicited by the district attorney and received from the victim.

(ii) Where the district attorney has solicited information from the victims as provided in subparagraph (i) and has received no response, the district attorney shall, based on other available information, make a recommendation to the court for restitution.

(iii) The district attorney may, as appropriate, recommend to the court that the restitution order be altered or amended as provided in paragraph (3).

. . .

**(g) PRESERVATION OF PRIVATE REMEDIES.**—No judgment or order of restitution shall debar the owner of the property or the victim who sustained personal injury, by appropriate action, to recover from the offender as otherwise provided by law, provided that any civil award shall be reduced by the amount paid under the criminal judgment.

**(h) DEFINITIONS.**—As used in this section, the following words and phrases shall have the meanings given to them in this subsection:

. . .

"PERSONAL INJURY." Actual bodily harm, including pregnancy, directly resulting from the crime.

"RESTITUTION." The return of the property of the victim or payments in cash or the equivalent thereof pursuant to an order of the court.

CONCURRING STATEMENT BY
KLEIN, J.:

¶ 1 I fully agree with the position of the majority that Medicare was entitled to restitution. However, I differ with the conclusion of the majority that this case is distinguishable from *Commonwealth v. Keenan*, 853 A.2d 381 (Pa.Super.2004), and believe that we of necessity should overrule *Keenan* as wrongly decided.

¶ 2 I do not think it makes any difference if a person or entity entitled to restitution pays the money to the victim or pays the money *on behalf of* the victim. What happened in this case is that Medicare did not pay the victim directly but instead paid the victim's medical providers the amounts that the victim owed. I agree with *this* holding and the cogent discussion of this issue by my distinguished colleague writing for the majority.

¶ 3 If a victim has a doctor bill, why should it make a difference if the victim pays the doctor and the insurance company reimburses the victim or the insurance company pays the doctor directly, extinguishing the victim's obligation to the doctor?

¶ 4 I do agree that *Commonwealth v. Figueroa*, 456 Pa.Super. 620, 691 A.2d 487 (1997) is distinguishable. Figueroa's victim was a fellow inmate of a prison, and since the *victim* prisoner would receive free treatment from the prison system, there was no obligation on *his* part that restitution would satisfy for him.

¶ 5 However, *Keenan* reached an opposite conclusion from this Court. *This* majority said:

"VICTIM." As defined in section 479.1 of the act of April 9, 1929 (P.L. 177, No. 175), known as The Administrative Code of 1929. The term includes the Crime Victim's Compensation Fund if compensation has been

Thus, we will not adopt the strictest possible interpretation if doing so would defeat the plain intent of the legislature. Again, we must bear in mind that the legislature "does not intent a result that is absurd, impossible of execution, or unreasonable; and that the legislature intends the entire statute to be effective and certain."

The *Keenan* majority instead said:

... medical providers are not "victims" in the true sense of the word under 18 Pa.Con.Stat. Ann § 1106, and therefore, the court cannot order that Keenan make payments to medical providers for the injuries he caused.

¶ 6 In other words, the *Keenan* court does the opposite from the majority in this case, taking the strictest interpretation of the statute rather than one that fits the intent of the legislature. Therefore, while I agree with almost everything the majority says, I do not believe that *Keenan* can stand with this opinion and believe that this holding properly overrules *Keenan*.

paid by the Crime Victim's Compensation Fund to the victim and any insurance company that has compensated the victim for loss under an insurance contract.
18   Pa.C.S.A. § 1106.