981 A.2d 893

**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Gregory Ricky BROWN, Appellant.**

Supreme Court of Pennsylvania.

Argued May 13, 2009.

Decided Oct. 21, 2009.

MaryJean Glick, Esq., James Jude Karl, Esq., for Gregory Ricky Brown.

Craig William Stedman, Esq., Susan E. Moyer, Esq., Ryan Thomas Boop, Esq., Lancaster County District Attorney's Office, for Commonwealth of Pennsylvania.

BEFORE: CASTILLE, C.J., and SAYLOR, EAKIN, BAER, TODD, McCAFFERY and GREENSPAN, JJ.

## *OPINION*

Justice TODD.

In this appeal by allowance, we address the issue of whether Medicare is entitled to restitution for payments made to a medical provider on an assault victim's behalf under the Crimes Code. For the reasons that follow, we conclude Medicare is entitled to restitution. Thus, we affirm the order of the Superior Court.

The facts underlying this matter are not in dispute. On January 23, 2006, Appellant Gregory Ricky Brown pled guilty to one count of simple assault for the beating of Scott Rissel, who was treated at Lancaster General Hospital for his injuries.[1] The Court of Common Pleas of Lancaster County imposed a sentence of two years' probation, a fine of $100.00, and restitution, which was to be capped at $1,137.50. The victim's insurance company, Physician's Mutual Insurance Company, paid $172.34 of the total amount owed to Lancaster General Hospital. The remaining $509.65 was paid by Medicare through Mutual of Omaha.[2]

On January 27, 2006, Brown filed a motion to modify restitution. A hearing on restitution was scheduled for February 13, 2006. At the hearing, Brown raised the issue of whether Medicare, as an extension of the federal government,

1. 18 Pa.C.S.A. § 2701(a)(1).

2. Generally speaking, Medicare is a federally-funded medical insurance program for the elderly and disabled. *Fischer v. United States,* 529 U.S. 667, 671, 120 S.Ct. 1780, 146 L.Ed.2d 707 (2000). Herein, it is undisputed that Medicare is a government agency that paid medical expenses as a result of Brown's criminal conduct.

34

could receive compensation for restitution. On March 15, 2006, the trial court issued an order granting Brown's motion to modify and fixing restitution in the amount of $172.34, reasoning that Brown was not required to make restitution to Medicare.

On March 24, 2006, the Commonwealth filed a petition for reconsideration, arguing Medicare was entitled to restitution under the Crimes Code. 18 Pa.C.S.A. § 1106.[3] On May 16, 2006, after conducting a hearing, the trial court reversed its prior decision and ordered Brown to pay restitution in the amount of $509.65 to Medicare.

Brown appealed to the Superior Court, and, on July 16, 2008, a unanimous *en banc* court held Medicare was entitled to restitution under Section 1106. *Commonwealth v. Brown*, 956 A.2d 992 (Pa.Super.2008). Specifically, in an opinion authored by Judge Maureen Lally–Green, the court concluded that, in 1995, the General Assembly amended Section 1106 to expand the category of those entities eligible for restitution to include insurance companies and government agencies. Consistent with this expansion, the court determined, while Medicare did not directly make payments to the victim, it provided "reimbursement to the victim" by making payment to the health care provider on the victim's behalf. *Id.* at 996–97. Based on this reasoning, the court concluded that criminal offenders "should provide restitution not only to the victim directly, but to entities that incurred expenses on the victim's behalf." *Id.* at 996.[4] Finding no difference between Medicare paying the victim directly, or paying the medical provider Lancaster General Hospital on the victim's behalf, the Superior Court affirmed Brown's sentence.

Brown filed a petition for allowance of appeal with our Court, and, on December 12, 2008, we granted review of the issue to determine whether Medicare is entitled to restitution

3.  Act of June 18, 1976, P.L. 394, No. 86 § 1, as amended.

4.  Judge Richard Klein joined the other members of the court in its holding, but would have overruled rather than distinguished *Commonwealth v. Keenan*, 853 A.2d 381 (Pa.Super.2004).

for payments made to a medical provider on an assault victim's behalf pursuant to 18 Pa.C.S.A. § 1106.[5, 6]

▮▮▮▮ By way of background, in the criminal context, generally speaking, restitution[7] is the requirement that the criminal offender repay, as a condition of his sentence, the victim or society, in money or services.[8] It is well established that the primary purpose of restitution is rehabilitation of the offender by impressing upon him or her that his criminal conduct caused the victim's loss or personal injury and that it is his responsibility to repair the loss or injury as far as possible. *Commonwealth v. Runion*, 541 Pa. 202, 206, 662 A.2d 617, 618 (1995). Thus, recompense to the victim is only a secondary benefit, as restitution is not an award of damages. Although restitution is penal in nature, it is highly favored in the law and encouraged so that the criminal will understand the egregiousness of his or her conduct, be deterred from repeating the conduct, and be encouraged to live in a responsible way. *Commonwealth v. Harner*, 533 Pa. 14, 22, 617 A.2d 702, 706–07 (1992). Thus, restitution, at its core, involves concepts of rehabilitation and deterrence.

Restitution is authorized by Section 1106 of the Crimes Code. 18 Pa.C.S.A. § 1106. That section mandates restitution

5. The issue in this appeal raises a question of law. Thus, our standard of review is *de novo* and our scope of review is plenary. *Commonwealth v. Samuel*, 599 Pa. 166, 172, 961 A.2d 57, 60–61 (2008).

6. We have jurisdiction over this appeal pursuant to 42 Pa.C.S.A. § 724(a).

7. While "restitution" generally means compensation required for the wrongful appropriation of money or property and "reparation" ordinarily refers to compensation required to be paid to a victim who has suffered physical injury as a result of the crime, both the progenitor of Section 1106, Section 1109 of the 1939 Penal Code, Act of June 24, 1939, P.L. 872, § 1109, and Section 1106, as set forth below, use the term "restitution" to cover both types of compensation. *Commonwealth v. Walton*, 483 Pa. 588, 595 n. 10, 397 A.2d 1179, 1183 n. 10 (1979).

8. *See* Black's Law Dictionary 1181 (5th ed.1979); *see generally* Lynne Henderson *The Wrongs of Victim's Rights*, 37 Stan. L.Rev. 937 (1985) (setting forth historical discussion of role of victim in criminal law and restitution).

and provides, in relevant part, that various entities are entitled to restitution:

(a) General rule.—**Upon conviction for any crime** wherein property has been stolen converted or otherwise unlawfully obtained, or its value substantially decreased as a direct result of the crime, or **wherein the victim suffered personal injury directly resulting from the crime, the offender shall be sentenced to make restitution in addition to the punishment prescribed therefor.**

\* \* \*

(c) Mandatory restitution.—

(1) The court shall order full restitution:

(i) Regardless of the current financial resources of the defendant, so as to provide the victim with the fullest compensation for the loss. The court shall not reduce a restitution award by any amount that the victim has received from the Crime Victim's Compensation Board or other governmental agency but shall order the defendant to pay any restitution ordered for loss previously compensated by the board to the Crime Victim's Compensation Fund or other designated account when the claim involves a government agency in addition to or in the place of the board. The court shall not reduce a restitution award by any amount that the victim has received from an insurance company but shall order the defendant to pay any restitution ordered for loss previously compensated by an insurance company to the insurance company.

(ii) **If restitution to more than one person is set at the same time, the court shall set priorities of payment. However, when establishing priorities, the court shall order payment in the following order:**

(A) The victim.

(B) The Crime Victim's Compensation Board.

(C) **Any other government agency which has provided reimbursement to the victim as a result of the defendant's criminal conduct.**

(D) Any insurance company which has provided reimbursement to the victim as a result of the defendant's criminal conduct.

\* \* \*

(h) Definitions.—As used in this section, the following words and phrases shall have the meaning given to them in this subsection:

\* \* \*

"Restitution." The return of the property of the victim or payments in cash or the equivalent thereof pursuant to an order of the court.

\* \* \*

"Victim." As defined in section 479.1 of the act of April 9, 1929 (P.L. 177, No. 175), known as The Administrative Code of 1929.[9] The term includes the Crime Victim's Compensation Fund if compensation has been paid by the Crime Victim's Compensation Fund to the victim and any insurance company that has compensated the victim for loss under an insurance contract.

18 Pa.C.S.A. § 1106 (footnote omitted) (emphasis added).

With this background in mind, we next consider the arguments of the parties. Brown contends the Superior Court erred in finding Medicare was entitled to restitution under Section 1106. According to Brown, the focus of the restitution statute is on the victim. Pointing to the 1995 amendments to Section 1106, wherein the legislature expanded those entities eligible to receive restitution, Brown offers that the General Assembly did not amend the definition of "victim" to include governmental agencies. Furthermore, while the statute may suggest a government agency's entitlement to restitution, the type of governmental agency entitled to restitution under Section 1106 is limited to those which provide reimbursement for loss directly to the victim and does not extend to every governmental agency which merely provides services to vic-

---

9. The Administrative Code's definition of "victim" relating to the rights and services for crime victims was repealed in 1998 and the subject matter set forth at 18 P.S. § 11.103. The definition set forth therein is not relevant to the issue before us.

tims. Moreover, Brown contends that prior Superior Court case law is consistent with this limited view of restitution, emphasizing that, if the victim becomes society, the defendant is no longer compensating the victim for losses which he or she personally suffered, and the purpose of restitution is lost. Thus, when viewing Section 1106 as a whole and considering its underlying purpose, Brown asserts only those agencies which provide compensation directly to the victim—i.e., reimbursement to victims for out-of-pocket expenses which they have personally incurred—rather than agencies which provide services to the victim—should receive restitution. Here, Medicare provided compensation to Lancaster General Hospital and not the victim; thus, Brown avers, he should not have been ordered to pay restitution to Medicare.

The Commonwealth responds by pointing to the terms of Section 1106 which specifically mandate that restitution be ordered for losses previously compensated by the Crime Victim's Compensation Fund or other governmental agency, acting in addition to, or in place of, the board that has provided reimbursement to the victim as a result of the offender's conduct. 18 Pa.C.S.A § 1106(c). According to the Commonwealth, Medicare is a government agency which compensated the victim for medical bills for which he would ordinarily be personally responsible. The Commonwealth also suggests Medicare is effectively serving as the victim's insurance company and, as such, should be entitled to reimbursement for this expense. Moreover, the Commonwealth refutes the assertion that upholding the Superior Court's decision will open the doors for claims of restitution for a myriad of other services provided by government agencies, as permitting Medicare to receive restitution only compensates the victim for losses he sustained. The Commonwealth submits, not only is Medicare compensating for the victim's medical expenses, but, by requiring the offender to make restitution to both insured and uninsured victims, the underlying policy of impressing upon the offender the magnitude of the loss that he caused and his responsibility to repair that loss will be served.

■ As our analysis involves interpreting the provision of the Crimes Code which mandates restitution, we necessarily turn to the Statutory Construction Act. 1 Pa.C.S.A. §§ 1501 *et seq.* The Statutory Construction Act provides the object of our interpretation and construction of statutes is to ascertain and effectuate the intention of the legislature. 1 Pa.C.S.A. § 1921(a). The General Assembly's intent is best expressed through the plain language of the statute. *Commonwealth v. Fithian*, 599 Pa. 180, 194, 961 A.2d 66, 74 (2008). When the words of a statute are clear and unambiguous, there is no need to look beyond the plain meaning of the statute "under the pretext of pursuing its spirit." 1 Pa.C.S.A. § 1921(b); *see Commonwealth v. Conklin*, 587 Pa. 140, 152, 897 A.2d 1168, 1175 (2006). Therefore, only when the words of a statute are ambiguous should a court seek to ascertain the intent of the General Assembly through consideration of statutory construction factors found in Section 1921(c). 1 Pa.C.S.A. § 1921(c); *Fithian*, 599 Pa. at 194, 961 A.2d at 74. Finally, penal statutes are to be strictly construed. 1 Pa.C.S.A. § 1928(b)(1); *Commonwealth v. Booth*, 564 Pa. 228, 234, 766 A.2d 843, 846 (2001); *Commonwealth v. Wooten*, 519 Pa. 45, 53, 545 A.2d 876, 879 (1988).

■ The need for strict construction, however, does not require that the words of a penal statute be given their narrowest meaning or that legislative intent be disregarded. *Id.* at 53, 545 A.2d at 880. It does mean, however, that, if an ambiguity exists in the verbiage of a penal statute, such language should be interpreted in the light most favorable to the accused. *Booth*, 564 Pa. at 234, 766 A.2d at 846; *Wooten*, 519 Pa. at 53, 545 A.2d at 879. More specifically, "where doubt exists concerning the proper scope of a penal statute, it is the accused who should receive the benefit of such doubt." *Booth*, 564 Pa. at 234, 766 A.2d at 846; *Commonwealth v. Allsup*, 481 Pa. 313, 317, 392 A.2d 1309, 1311 (1978).

Finally, the Crimes Code itself supplies guidance as to the construction of the provisions of the Code: "The provisions of this title shall be construed according to the fair import of their terms but when the language is susceptible of differing

constructions it shall be interpreted to further the general purposes stated in this title and the special purposes of the particular provision involved." 18 Pa.C.S.A. § 105; *Fithian*, 599 Pa. at 195, 961 A.2d at 74.

With these tenets in mind, we turn to an analysis of the words employed by the General Assembly in discerning its intent. Initially, we note the statute does not explicitly provide whether Medicare may be entitled to restitution under this scheme. Not only does Section 1106 not mention Medicare or specific governmental entities, its terms are unclear as to which governmental entities may enjoy restitution. The definition of "victim," while specifically including the Crime Victim's Compensation Fund and an insurance company, does not mention government agencies. 18 Pa.C.S.A. § 1106(h). Yet, Section 1106 also makes manifest that the legislature intended that a variety of possible persons are eligible to receive restitution payments, including government agencies, as evidenced by its priority scheme when restitution to more than one person is set at the same time. Specifically, by its terms, Section 1106 envisions restitution be paid to: (1) the victim; (2) the Crime Victim's Compensation Board; (3) "[a]ny other government agency which has provided reimbursement to the victim as a result of the defendant's criminal conduct;" and (4) "[a]ny insurance company which has provided reimbursement to the victim as a result of the defendant's criminal conduct." 18 Pa.C.S.A. § 1106(c)(1)(ii)(A-D). Thus, while the General Assembly seemingly envisions certain government agencies to be entitled to restitution, which government agencies are to receive restitution is not plain.

Based upon the above, we find that the words of the statute are not clear and unambiguous with respect to whether Medicare is eligible for restitution. Therefore, as the terms of Section 1106 are not explicit on this issue, we turn to consideration of the statutory construction factors found in Section 1921(c) of the Statutory Construction Act. 1 Pa.C.S.A. § 1921(c). Specifically, we look to the legislative history of Section 1106, the object to be obtained, and the consequences

of particular interpretations. 1 Pa.C.S.A. § 1921(c)(4), (6), and (7).

To address the intent of the legislature with respect to the breadth of those entities eligible for restitution, we first look to the legislative history of Section 1106 and find it to be informative regarding the General Assembly's intent. Prior to 1995, restitution was discretionary: "the offender may be sentenced to make restitution." 18 Pa.C.S.A. § 1106(a). Furthermore, only the "victim" was permitted restitution and the victim was defined as a "person." Writing for our Court, then-Justice, now-Chief Justice Castille, spoke to the breadth of the pre-amendment restitution statute in *Commonwealth v. Runion*, 541 Pa. 202, 662 A.2d 617 (1995). In *Runion*, a victim, who was a welfare recipient, was assaulted, and hospitalized for her injuries. The Department of Public Welfare paid the victim's medical costs and filed for restitution. The trial court and Superior Court found that the Department could be considered a victim for restitution purposes. Our Court opined that Section 1106 failed to indicate whether government agencies were considered to be within the definition of "victim," which was defined as any "person" who suffered injuries as a direct result of the crime. 18 Pa.C.S.A § 1106(h). Therefore, we turned to the Statutory Construction Act's definition of "person." 1 Pa.C.S.A. § 1991. The Court reasoned that, based upon the statutory definition of that term, which excluded from the definition of "person" government agencies of the Commonwealth, government agencies did not fall within the definition of "victim," and, therefore, were not eligible for restitution. *Runion*, at 210, 662 A.2d at 621.

Importantly, in rendering this decision, the Court regretfully recognized that the primary purpose of the restitution statute was the rehabilitation of the offender, but believed itself compelled by the statutory definitions as written: "unless or until the legislature enacts language to the contrary, we must find that the Department of Public Welfare, as a Commonwealth entity, is expressly excluded from the defini-

tion of a 'person', and as such may not be considered as a victim under 18 Pa.C.S. § 1106." *Id.*

In 1995, and again in 1998, however, the legislature rewrote Section 1106 to significantly strengthen and amplify the notion of restitution, and to expand the class of entities eligible for restitution. Specifically, after the amendments, restitution became mandatory. 18 Pa.C.S.A. § 1106(a) ("the offender shall be sentenced to make restitution in addition to the punishment prescribed therefor"). Moreover, restitution to the greatest extent is required. *Id.* § 1106(c)(1) ("[t]he court shall order full restitution"); *id.* § 1106(c)(1)(i) (the victim is entitled to "the fullest compensation for the loss").

Furthermore, the General Assembly broadened the class of those entities eligible to receive restitution. While not the model of clarity, the legislature certainly evinced an extension of those entities who could receive restitution through the priorities scheme. As noted above, this included not only the "victim," but also the Crime Victim's Compensation Board, other government agencies, and insurance companies. Furthermore, the General Assembly explicitly enlarged the definition of "victim" to include the Crime Victim's Compensation Fund and insurance companies. Thus, while the General Assembly expanded the definition of "victim," which was the focus of our opinion in *Runion*, and in doing so widened the definition of that term, the revamping of Section 1106 was even more sweeping and implicitly broadened the class of entities eligible for restitution to include government agencies, in addition to manifesting a heightened focus on the need for and importance of restitution.

Having found the class of entities entitled to restitution after the 1995 amendments expanded to include government agencies, we must determine which agencies are embraced by the Crimes Code. As noted by the Superior Court, priority to receive restitution is accorded a government agency "which has provided reimbursement to the victim as a result of the defendant's criminal conduct." 18 Pa.C.S.A. § 1106(c)(1)(ii)(C). Initially, it is undisputed that Medicare is a government agency and that it paid medical expenses as a

result of Brown's criminal conduct; thus, we turn to whether Medicare provided reimbursement to the victim. The Superior Court found the phrase, "reimbursement to the victim," to be ambiguous, as it could reasonably mean reimbursement directly to the victim or indirectly on the victim's behalf. *See Brown,* 956 A.2d at 995. As noted above, the court went on to conclude that the phrase included government agencies which provided reimbursement on behalf of the victim.

The primary thrust of Brown's argument is that, while government agencies may be entitled to restitution, it is only those institutions that paid the victim directly that fall into this class, and here, Medicare paid the victim's medical providers and not the victim directly. In support of his position, Brown points to Superior Court case law which followed the 1995 amendments. Specifically, in *Commonwealth v. Figueroa,* 456 Pa.Super. 620, 691 A.2d 487 (1997), a three-judge panel of the Superior Court grappled with the issue of whether the Department of Corrections could be entitled to restitution under Section 1106 for medical care it provided to an injured prisoner who was the victim of an assault during a prison fight which led to the offender pleading guilty to involuntary manslaughter. The Superior Court majority focused on the fact that the amendments did not include a government agency as a "victim," and reasoned that the Crime Victim's Compensation Fund and insurance companies, who were included in the expanded definition, made direct payments to the victim, and, thus, could receive restitution from the offender. In reaching this conclusion, the court opined that the legislature "never intended to include the numerous governmental agencies which provide social, medical and supportive services to victims of crime. The victim is not being given compensation by such agencies and the agencies are not entitled to restitution as reimbursement for the service." *Id.* at 490. Likewise, in *Commonwealth v. Keenan,* 853 A.2d 381 (Pa.Super.2004), the Superior Court reversed the order of the trial court for restitution of the unpaid balance due to the victim's treating physician. The *Keenan* court, relying upon *Figueroa,* reasoned that restitution is not meant to be a reimbursement

44

system to third parties but rather a compensation system to "victims" as that term is defined by the statute. Thus, it held the trial court erred in ordering payments of restitution to the medical provider rather than the victim. *Id.* at 384.

In answering the question of whether Medicare "provided reimbursement to the victim," 18 Pa.C.S.A. § 1106, we note that the term "reimbursement" is not defined in the statute. However, as evinced by the broadened Section 1106, the General Assembly not only expressed an increased focus on the importance of mandatory restitution, it believed that criminal offenders should both provide restitution to the victim directly, and to entities incurring expenses on the victim's behalf. 18 Pa.C.S.A. § 1106(c)(1)(ii); 18 Pa.C.S.A § 1106(c)(1)(i) ("The court shall not reduce a restitution award by any amount that the victim has received from the Crime Victim's Compensation Board or other government agency.").

Additionally, this legislative history of the expansion of the class of entities entitled to restitution is consistent with the object to be obtained as enunciated by the General Assembly. As noted above, and expressed by our Court in *Runion,* the main purpose behind the statute is rehabilitation of the offender by impressing upon him that his criminal conduct caused the victim's loss or personal injury and that it is his responsibility to repair the loss or injury as far as possible, and that compensation to the victim is only secondary. *Runion,* at 206, 662 A.2d at 618. Furthermore, the goals of restitution include the hope that the criminal will be deterred from repeating the conduct and encouraged to live in a responsible way. *Harner,* at 22, 617 A.2d at 706–07. Thus, an interpretation allowing receipt of restitution by those entities that directly and indirectly provided compensation to the victim of a crime would be consonant with the overarching purposes of restitution—rehabilitation and deterrence—and the object to be obtained by the amended restitution statute. Again, we are directed by the legislature that "[t]he provisions of this title shall be construed according to the fair import of their terms but when the language is susceptible of differing constructions it shall be interpreted to further the general purposes stated in this

title and the special purposes of the particular provision involved." 18 Pa.C.S.A. § 105. Finding the legislature intended Medicare to be entitled to restitution would be consistent with this mandate.

Related thereto, to find restitution available only to those entities which directly paid the victim would place form over substance and ignore the realities of medical reimbursement. As noted by the Superior Court below, if the medical providers had sent a bill directly to the victim which the victim paid, and Medicare reimbursed the victim, Medicare would be entitled to restitution under Section 1106. Here, Medicare paid the medical provider directly. To treat these scenarios differently would not only ignore the reality of how medical billing and payments are typically processed, but also would be unreasonable and inconsistent with the intent of the legislature. 1 Pa.C.S.A. § 1922 (providing that the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable). Moreover, we cannot believe that the General Assembly intended to permit restitution for private insurance companies which insure certain individuals but deny restitution to Medicare which provides analogous coverage for eligible individuals.

Finally, we consider the consequences of a particular interpretation. Consistent with the statute when read as a whole, and the purpose behind restitution, we find that interpreting Section 1106 to embrace those government entities that indirectly provide reimbursement to a victim would serve the salutary purposes of making manifest to criminal offenders the egregious nature of their actions, impressing upon defendants that they are responsible for their conduct, deterring repeat malfeasance, and encouraging these individuals to live in a responsible way. Furthermore, we do not believe that such an interpretation would result in the adverse consequences suggested by Brown and posited by the Superior Court in *Figueroa*, where restitution is transformed into a reimbursement to society. Rather, such an interpretation is limited to those government agencies which make payments on behalf of a victim of a crime. It is on this basis that the Superior Court

46

below cogently distinguished its decision in *Figueroa,* in which the government entity provided the medical services itself, rather than a government agency that paid monies on behalf of a victim.

In conclusion, based upon the legislative history of Section 1106 and the General Assembly's extensive revision to that section after our decision in *Runion,* as well as the object to be obtained by the statute, and the consequences of a particular interpretation, we believe the legislature intended that a criminal offender not only be required to provide restitution to the victim directly, but to government agencies which indirectly provide reimbursement to the victim, including payment to a medical provider on the victim's behalf. As Medicare, a government agency, made payments to a medical provider on behalf of the victim as a direct result of Brown's crime, we find that it is entitled to reimbursement under Section 1106.

For the reasons stated above, we affirm the order of the Superior Court. Jurisdiction relinquished.

Chief Justice CASTILLE, Justice SAYLOR, EAKIN, BAER, McCAFFERY and Justice GREENSPAN join the opinion.