J-E01002-23

2023 PA Super 117

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| VINCENT SMITH | : | |
| | : | |
| Appellant | : | No. 1256 WDA 2021 |

Appeal from the Judgment of Sentence Entered June 30, 2021
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0008964-2018

BEFORE:  PANELLA, P.J., BENDER, P.J.E., LAZARUS, J., OLSON, J., STABILE, J., DUBOW, J., NICHOLS, J., McLAUGHLIN, J., and McCAFFERY, J.

DISSENTING OPINION BY LAZARUS, J.:          **FILED: JUNE 30, 2023**

I respectfully dissent.  I disagree with the Majority's conclusion that a defendant may be convicted of and sentenced on separat0e counts of subsection 3301(a)(1)(i) when there is one arson, but multiple victims.  In my view, the statutory language of subsection 3301(a)(1)(i) of the Crimes Code, arson endangering persons, is ambiguous.  Accordingly, under the rule of lenity, we are required to strictly construe the statute in favor of the appellant.  ***See Commonwealth v. Cousins***, 212 A.3d 34, 39 (Pa. 2019). (rule of lenity requires ambiguous statutes be construed in favor of defendant).

The question before this Court is based purely upon statutory interpretation of the statute governing the offense of arson endangering persons.  The statute provides, in relevant part:

**(a) Arson endangering persons.--**

> (1) A person commits a felony of the first degree if he **intentionally starts a fire** or causes an explosion, or if he aids, counsels, pays[,] or agrees to pay another to cause a fire or explosion, whether on his own property or on that of another, and if:
>
>> (i) he thereby recklessly places another person in danger of death or bodily injury, including but not limited to a firefighter, police officer or other person actively engaged in fighting the fire[.]

18 Pa.C.S.A. § 3301(a)(1)(i) (emphasis added).

When faced with the statutory interpretation of a penal statute, we are guided by the principles set forth in the Statutory Construction Act,[1] the paramount tenet of which is that "[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S.A. § 1921(a). "The General Assembly's intent is best expressed through the plain language of the statute." **Commonwealth v. Brown**, 981 A.2d 893, 897 (Pa. 2009). Thus, where the terms of a statute are clear and unambiguous, they will be given effect consistent with their plain meaning. **See** 1 Pa.C.S.A. § 1921(b).

Courts of this Commonwealth ascertain the plain meaning of a statute by ascribing to the particular words and phrases the meaning that they have acquired through their common and approved usage, and in context. **Id.** at § 1903. Additionally, in interpreting statutes, we are mindful that "the singular shall include the plural, and the plural, the singular. . . ." **Id.** at 1902. Further, the "title and preamble of a statute may be considered in the

---

[1] 1 Pa.C.S.A. §§ 1501-1991.

- 2 -

construction thereof . . . .  [Additionally, t]he headings prefixed to titles, parts, articles, chapters, sections[,] and other divisions of a statute shall not be considered to control **but may be used to aid in the construction thereof**." *Id.* at § 1924 (emphasis added).

However, where the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering,

> among other matters:  [t]he occasion and necessity for the statute[, t]he circumstances under which it was enacted[, t]he mischief to be remedied[, t]he object to be attained[, t]he former law, if any, including other statutes upon the same or similar objects[, t]he consequences of a particular interpretation[, t]he contemporaneous legislative history[, and t]he legislative and administrative interpretations of such statute.

*Id.* at § 1921(c).  Finally, we must presume that the legislature does not intend a result that is unreasonable, absurd, or impossible of execution.  *Id.* at § 1922(2).

Because section 3301 is a penal statute, it must be strictly construed. *See Commonwealth v. Gamby*, 283 A.3d 298, 306 (Pa. 2022).  In addition, the rule of lenity does not require that we give the words of a statute their "narrowest possible meaning," nor does it "override the general principle that the words of a statute must be construed according to their common and approved usage."  *Gamby*, *supra* at 306 (citations and quotations omitted). But, where "doubt exists concerning the proper scope of a penal statute, it is the accused who should receive the benefit of such doubt."  *Id.*  The Crimes Code further instructs that:  "The provisions of this title shall be construed according to the fair import of their terms[,] but when the language is

susceptible of differing constructions it shall be interpreted to further the general purposes stated in this title and the special purposes of the particular provision involved." 18 Pa.C.S.A. § 105.

The statutory language of subsection 3301(a)(1) can be interpreted two ways. The Majority, in its reading, concludes that the "unit of prosecution" is the endangerment of another person.[2] In reaching this conclusion, the Majority also determines that the statute is not ambiguous. Because I believe this determination to be in error, I dissent.

In my view, subsection 3301(a)(1) is capable of being read another way, that being that the unit of prosecution, i.e., the *actus reus* that the General Assembly intended to punish, is the intentional starting of a fire, or put another way, an arson. **See** 18 Pa.C.S.A. § 3301(a)(1). Our Supreme Court recently explained:

> The unit of prosecution is the **actus reus** that the General Assembly intended to punish. Put otherwise, the unit of prosecution is the minimum conduct that must be proven to obtain a conviction for the statute in question. Only a single conviction and resulting punishment may be imposed for a single unit of prosecution. . . . **To determine the correct unit of prosecution, the inquiry should focus on whether separate and distinct acts have been committed.**

---

[2] I note that in many cases where arson endangering persons is charged, there is also a separate count of recklessly endangering another person (REAP). 18 Pa.C.S.A. § 2705.

***Commonwealth v. Satterfield***, 255 A.3d 438, 445-46 (Pa. 2021) (emphasis added).[3]

The key inquiry is whether the "unit of prosecution" is each **arson** or each **endangered person**.  In my view, the answer is each **arson**. The Majority, the trial court, and the Commonwealth have each conflated the issue; the determining factor is not whether "endangered person" is a **required** element to convict a defendant, but whether it is the **key** element of the prosecution.

Subsection 3301(a)(1)(i)'s stated *actus reus* is the intentional starting of a fire or explosion.  There is no requirement in the statute that the actor know or intend to harm another with the fire.  Instead, it is simply enough that the **setting of the fire** has the effect of placing another person in danger of death or bodily injury, intended or otherwise.  The statute criminalizes the intentional act of starting a fire or explosion.  Thus, I conclude that the unit of prosecution, as used in this statute, is the **arson**, not the endangerment.[4]

---

[3] I note that ***Satterfield*** provides the controlling analysis and guidance for the instant issue, but ultimately, like ***Commonwealth v. Frisbie***, 485 A.2d 1098 (Pa. 1984), its holding does not pertain to subsection 3301(a)(1) and, consequently, does not dictate our decision as strictly as the Majority appears to claim.

[4] The Majority takes issue with Appellant's purported failure to explain "arsons as ersatz crimes against persons" in his brief.  ***See*** Majority, at 6.  I note that the word "ersatz" is commonly defined as an adjective meaning a "usually artificial and inferior substitute or imitation."  ***See*** www.merriam-webster.com/dictionary/ersatz.  Throughout his brief, Appellant argues the unit of prosecution is unclear, and that there are two possible interpretations. *(Footnote Continued Next Page)*

Despite the Majority's holding to the contrary, the language "recklessly places another person in danger . . ." is **not** the *actus reus* but the **result** of the *actus reus*. Rather, reading its plain language, the statute does not require an actor to intentionally light a fire to put another in danger, but requires the intentional starting of a fire that has the effect of **recklessly** placing another in danger. Put another way, the language "thereby recklessly places another person" denotes the result of the prescribed *actus reus*, the arson. While that language is, no doubt, an element of the crime for purposes of conviction, it is **not the unit of prosecution**. As highlighted in **Satterfield**, there is no separate or **distinct action** where an individual lights a **single fire** that endangers multiple people. It is evident that a single fire could rage and endanger dozens or hundreds of people, but that does not mean an actor committed more than one act—for each person endangered—under this statute.

Moreover, the General Assembly saw fit to include the "intentional" *mens rea* requirement on the starting of a fire. **See** 18 Pa.C.S.A. §

---

**See** Brief for Appellant, at 15-23. Appellant's brief quite clearly outlines these two readings as understanding arson as either a crime against property or a crime against persons. **Id.** Appellant focuses on the ambiguity that exists in section 3301, rather than spelling out both readings, and I note that his phrasing of "arsons as ersatz crimes against persons" is a rather succinct way to state that one of the two interpretations of arson as a crime against persons is a substitute for the actual portion of the Crimes Code detailing crimes against people, Article B. **See** Title 18, Article B, Offenses Involving Danger to the Person; **id.** at Article C, Chapter 33, Section 3301 (pertaining to "Offenses Against Property"). Indeed, the interpretation of "arsons as ersatz crimes against persons" is the exact conclusion that the Majority has reached.

3301(a)(1). Similarly, in **Satterfield**, our Supreme Court addressed whether the unit of prosecution for our "hit-and-run" statute, 75 Pa.C.S.A. § 3742, was the accident or the flight from the accident. The Court concluded that, based upon the language in section 3742, it was the intentional flight from an accident, prior to the fulfillment of duties prescribed therein, that was the unit of prosecution. **See Satterfield**, **supra**, at 449-50.

Additionally, I note that while chapter and subdivision headings do not control our reading in questions of statutory interpretation, they are nevertheless enlightening. **See** 1 Pa.C.S.A. § 1924. Here, section 3301 is titled "Arson and related offenses," and paragraph (a) is titled "Arson endangering **persons**." 18 Pa.C.S.A. §§ 3301, 3301(a) (emphasis added). These two sections are under Chapter 33, titled "Arson, Criminal Mischief and Other Property Destruction," which is further designated, under Article C, as "Offenses **Against Property**." **Id.** at Chapter 33; **Id.** at Article C (emphasis added). The Majority dismisses these titles, and instead relies upon **Frisbie**, **supra**, for the notion that "another person" always means that the General Assembly intended that a defendant be convicted and sentenced for **each** victim of his or her criminal conduct. **See Frisbie**, 485 A.2d at 1100; Majority Opinion, 5/15/23, at 15-16. Before discussing **Frisbie** and its holding, I briefly note that the Court in **Frisbie** addressed the language in the statute describing the offense of recklessly endangering **another person**, 18 Pa.C.S.A. § 2705, which is codified under a different chapter, Chapter 27, titled "Assault," and Article B "Offenses Involving Danger to the **Person**." 18

Pa.C.S.A. at Chapter 27; *id.* at Article B (emphasis added). This difference in titles, chapters, and articles between the REAP and arson endangering persons statutes lends further ambiguity to subsection 3301(a)(1).

Section 3301 goes on to define the offense of arson in other contexts including, but not limited to: starting a fire to a historic resource; starting a fire endangering property; starting a fire that kills a person; and reckless burning. ***See*** 18 Pa.C.S.A. § 3301. In virtually each of these subsections, the General Assembly specifically criminalizes **the intentional starting of a fire**. ***See id.*** at § (a)(1) ("a person commits a felony of the first degree if he **intentionally starts a fire**. . . .") (emphasis added); *id.* at § (a)(1.1) ("a person commits a felony of the first degree if he **intentionally starts a fire**. . . .") (emphasis added); *id.* at § (a.2)(1) ("A person commits a felony of the second degree if the person . . . (1) **[i]ntentionally starts a fire**. . . .") (emphasis added); *id.* at § (c) ("A person commits a felony of the second degree if he **intentionally starts a fire**. . . .") (emphasis added); *id.* at § (d) ("A person commits a felony of the third degree if he **intentionally starts a fire**. . . .") (emphasis added); *id.* at § (d.1) ("A person commits a summary offense if he **intentionally** or recklessly **starts a fire**. . . .") (emphasis added).

The General Assembly's consistent use of this phrase throughout section 3301 indicates its intent to criminalize the action of starting a fire and is comparable to the statutory language, "involved in an accident," emphasized in and relied upon by our Supreme Court in ***Satterfield***. ***See Satterfield***, at

448-49 (discussing similarities between "hit-and-run" statutes and use of phrase "involved in an accident"). However, the Court in **Satterfield** also stated that:

> [I]t is **solely involvement** in an accident that triggers the obligation to stop and remain at the scene . . . [t]his obligation applies to every driver involved in the accident, and in **no respect does the obligation depend upon whether the driver caused the accident** (directly or indirectly). The relevant statutory language in [s]ection 3742(a) includes **no indication that the General Assembly intended for a violation to be based upon consideration of who caused an accident or its results.** To the contrary, the phrase "involved in an accident" is repeatedly used without exception in the "hit-and-run" statutes."

*Id.* (emphasis added). The Court makes clear that the language "involved in an accident" renders it irrelevant who **caused** the accident in order to trigger the "hit-and-run" statute's duty to stay at the scene. *Id.*

In contrast to the statutes at issue in **Satterfield**, I find it quite compelling that the General Assembly, in drafting section 3301, intended to criminalize the intentional starting of a fire. *See* 18 Pa.C.S.A. § 3301. Unlike the language in the hit-and-run statutes, the language in section 3301 indicates that the General Assembly intended for a violation to be based upon consideration of the intentional starting of a fire. *See id.*

I also find the analysis in **Frisbie** distinguishable and, therefore, not controlling to our present predicament. There, our Supreme Court addressed whether, under the REAP statute, a single act could result in multiple convictions and sentences, one for each victim. *See Frisbie*, 485 A.2d at 1100. Briefly, a person commits REAP "if he recklessly engages in conduct

which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S.A. § 2705. The Majority relies upon, and focuses on, the "another person" language as dispositive of our interpretation of subsection 3301(a)(1).

The Majority ignores the fact that REAP criminalizes **unspecific** "**conduct**." ***Id.*** (emphasis added). By contrast, subsection 3301(a)(1) specifically applies to an actor who "**intentionally starts a fire**." 18 Pa.C.S.A. § 3301(a)(1) (emphasis added),[5] ***but see*** 18 Pa.C.S.A. § 2705. Therefore, I disagree with the Majority's contention that ***Frisbie*** has foreclosed our ability to interpret subsection 3301.[6]

In conclusion, there exist, in my view, at least two interpretations of this statute, and accordingly, significant doubt exists concerning the proper scope of subsection 3301(a)(1). In such a circumstance, we are compelled to apply the rule of lenity, which requires us to find in favor of the accused. ***See Gamby***, ***supra***. Accordingly, I would vacate Smith's judgment of sentence and remand for resentencing on two counts of voluntary manslaughter and one count of arson endangering persons.

---

[5] As noted *supra*, subsection 3301(a)(1) also criminalizes other specific, intentional, acts including but not limited to causing an explosion and hiring someone to start a fire on the actor's behalf. ***See id.***

[6] Nevertheless, I agree that the phrase "another person," standing alone, is singular and denotes a single person. Consequently, I take no issue with the holding in ***Frisbie*** that, under REAP, one action can result in multiple convictions and sentences. ***See Frisbie***, ***supra***.